AHNE & JI, LLP
By: Younghoon Ji, Esq.
*Attorneys for Plaintiff*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel.: (212) 594-1035
Email: yji@ahnejillp.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

SEOK JAE YANG,                                         Civil Action No.:

                                    Plaintiff,

                                                      **COMPLAINT**

            -against-

SUNRISE SENIOR SERVICE LLC d/b/a                      **JURY TRIAL DEMANDED**
HANMAUM DAYCARE, TAEYOUNG
SONG, JIEUN OH, AURUM TRADING INC.,
JI HOON YOU, KANGSAN CONSULTING LLC,
KANGSAN LEE, L & K OFFICE INC.,
JIN YOUNG KANG a/k/a JINYOUNG KANG a/k/a
JIN Y. KANG, and DOES 1 through 50, inclusive,

                                    Defendants.
--------------------------------------------------------------x

Plaintiff, SEOK JAE YANG, by and through his attorneys, AHNE & JI, LLP, brings this

action against Defendants SUNRISE SENIOR SERVICE LLC d/b/a HANMAUM DAYCARE,

TAEYOUNG SONG, JIEUN OH, AURUM TRADING INC., JI HOON YOU, KANGSAN

CONSULTING LLC, KANGSAN LEE, L & K OFFICE INC., JIN YOUNG KANG a/k/a

JINYOUNG KANG a/k/a JIN Y. KANG, and DOES 1 through 50, inclusive (hereinafter,

collectively referred to as "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      SUNRISE SENIOR SERVICE LLC d/b/a HANMAUM DAYCARE, a senior

daycare service provider, and its principals – TAEYOUNG SONG and JIEUN OH – AURUM

TRADING INC., a corporation disguised as a food manufacturer or distributor, and its principal –

1

JI HOON YOU – KANGSAN CONSULTING LLC, a limited liability company disguised as a business marketing/consulting firm, and its owner – KANGSAN LEE – L & K OFFICE INC., an accounting firm, and its principal – JIN YOUNG KANG a/k/a JINYOUNG KANG a/k/a JIN Y. KANG – engaged in fraudulent, deceptive activities of wire fraud, money laundering, other monetary transactions in property derived from specified unlawful activities described in this Complaint, transporting and receiving stolen money, and traveling interstate in aid of racketeering enterprises, for Defendants' shared, common objective of financially enriching themselves.

2.      By reasons of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff was injured in his business or property.

3.      The principals of Sunrise, Aurum Trading, Kangsan Consulting, and L & K engaged in a pattern of racketeering activities and fraudulent schemes to divert a substantial amount of money in government funds under the Federal Medicaid and/or Medicare programs, such as collusive money laundering arrangements, including laundering money by converting the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and/or Medicare programs into cash and sharing the cash among themselves for their own financial benefits, distributing and giving away cash payouts to Sunrise's elderly clients and other seniors as "rebates," "kickbacks," or "allowances" in order to induce them to enroll in Sunrise's senior care program or to remain as Sunrise's clients, giving and receiving "rebates," "kickbacks," and/or "referral fees" among themselves, falsifying business records, receipts, and/or invoices in order to convert the funds for their own financial benefits, transporting interstate stolen money, traveling interstate in aid of the racketeering enterprises, and paying themselves a substantial amount of money in cash for work that was not performed or otherwise they are not entitled to.

4.      Defendants, among themselves, created a system where they could launder money by converting the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs into cash and use the cash to pay Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances."

5.      In order to disguise these fraudulent transactions as legitimate transactions, Defendants conspired with each other to create fake invoices as if Sunrise's issuances of various checks or wires to Aurum Trading were legitimate transactions.

6.      In doing so, L & K and its principals – Defendants Lee and Kang – who provide tax and accounting services to Sunrise, Aurum Trading, and Defendant You, as IRS Enrolled Agents, did create fake invoices, retroactively, under the name of Aurum Trading and disseminated said fake invoices to Sunrise.

7.      Specifically, from December 1, 2021 to February 1, 2022, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46.

8.      On or about January 9, 2023, L & K, an accounting firm, and its principals – Defendants Lee and Kang – willfully and fraudulently created forty-nine (49) fake invoices, retroactively dated from December 1, 2021 to February 1, 2022, in the total amount of $371,661.46 as if those invoices were issued by Aurum Trading, which is L & K's client.

9.      Defendants Song and Oh claimed that they made payments for said forty-nine (49) invoices to Aurum Trading during the period March 2022 through May 2022.

10.     By creating, forging, counterfeiting, and disseminating fake invoices, as if those invoices were issued by Aurum Trading, Defendants not only enabled themselves to launder money and secretly gain financial benefits for themselves, but also enabled Sunrise and its principals to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022, which primarily consisted of insurance reimbursement payments, to which Plaintiff was, and still is, entitled.

11.     Defendants' shared, common objective was to financially enriching themselves by converting the insurance reimbursement payments Sunrise, Defendant Song, and Defendant Oh received from various insurance companies under the Federal Medicaid and Medicare programs into cash and share the proceeds of unlawful activities among themselves.

12.     In doing so, Defendants willfully and fraudulently deprived Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, to which Plaintiff was, and still is, entitled under the terms and conditions of the contracts between Plaintiff, on one hand, and Defendants Song and Oh, on the other, by claiming that Plaintiff withheld the existence of Sunrise's Accounts Payable, at the time of Closing, in the amount of $371,661.46, the total amount of the fake invoices created by L & K and its principals under the name of Aurum Trading.

13.     Defendants converted a substantial amount of Medicaid and/or Medicare funds to enrich themselves, their families, and business associates through an elaborate network of related companies and collusive, fraudulent transactions, rather than use the funds for their intended purposes.

14.     Defendants wove a complicated web of fraudulent financial schemes to siphon money for their own financial benefits.

15. Senior daycare centers are supposed to be places where the elderly and vulnerable feel safe, not vehicles for scheming their owners, staff members, and affiliated entities to make illegal profits through "kickbacks," "rebates," "referral fees," and/or get-rich quick opportunities. Defendants preyed on the elderly by bribing their way into Sunrise.

16. Plaintiff has been damaged as a direct and proximate result of Defendants' active participation in such enterprise, as alleged herein.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action because it arises under the laws of the United States, 28 U.S.C. §§ 1331, 1337, and 1343, and more particularly, the instant action arises under an Act of Congress, namely, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c).

18. This Court has supplemental jurisdiction over Plaintiff's claims brought under the laws of the State of New York pursuant to 28 U.S.C. § 1367, as they arise from the common nucleus of operative facts.

19. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because the events set forth in this Complaint occurred within this District.

## PARTIES

20. Plaintiff, SEOK JAE YANG ("Plaintiff"), was and still is an individual residing in Philadelphia, Pennsylvania.

21. Upon information and belief, Defendant SUNRISE SENIOR SERVICE LLC d/b/a HANMAUM DAYCARE ("Sunrise") was and still is a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

22.     Upon information and belief, Sunrise was and still is a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

23.     Upon information and belief, Sunrise has its principal executive offices at 35-20 147th Street, 2nd Floor, Flushing, NY 11354 and 35-20 146th Street, Flushing, NY 11354.

24.     Upon information and belief, Sunrise conducted and carried on, and still conducts and carries on, business in the State of New York.

25.     Upon information and belief, Sunrise transacted, and still transacts, business within the State of New York.

26.     Upon information and belief, Sunrise derived, and still derives, a substantial amount of revenue from goods used or consumed or services rendered in the State of New York.

27.     Upon information and belief, Sunrise expected or should have reasonably expected its acts to have consequences in the State of New York.

28.     Sunrise has been maintaining, and still maintains, continuous and systematic contacts with, and within, the State of New York, and it regularly conducts business in the State of New York.

29.     Upon information and belief, Defendant TAEYOUNG SONG ("Defendant Song") was and still is an individual residing in Queens County, New York.

30.     Upon information and belief, Defendant Song was and still is officer, director, shareholder, president, member, and/or managing member of Sunrise.

31.     Upon information and belief, Defendant JIEUN OH ("Defendant Oh") was and still is an individual residing in Queens County, New York.

32.     Upon information and belief, Defendant Oh was and still is officer, director, shareholder, president, member, and/or managing member of Sunrise.

33.     Upon information and belief, Defendant Oh is Defendant Lee's fiancé.

34.     Upon information and belief, Defendant Oh worked and/or currently works at a company, named, "HomeFirst," one of the Managed Long Term Care providers that has contractual relationship with Sunrise, and facilitated and/or currently facilitates the process of issuing insurance reimbursement payments under the Federal Medicaid and/or Medicare programs to Sunrise.

35.     Upon information and belief, Defendant AURUM TRADING INC. ("Aurum Trading") was and still is a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

36.     Upon information and belief, Aurum Trading was and still is a foreign corporation authorized to do business under and by virtue of the laws of the State of New York.

37.     Upon information and belief, Aurum Trading has its principal executive office at 55 West 47th Street, Suite 1060, New York, NY 10036.

38.     Upon information and belief, Aurum Trading conducted and carried on, and still conducts and carries on, business in the State of New York.

39.     Upon information and belief, Aurum Trading transacted, and still transacts, business within the State of New York.

40.     Upon information and belief, Aurum Trading derived, and still derives, a substantial amount of revenue from goods used or consumed or services rendered in the State of New York.

41.     Upon information and belief, Aurum Trading expected or should have reasonably expected its acts to have consequences in the State of New York.

42. Aurum Trading has been maintaining, and still maintains, continuous and systematic contacts with, and within, the State of New York, and it regularly conducts business in the State of New York.

43. Upon information and belief, Defendant JI HOON YOU ("Defendant You") was and still is an individual residing in Miami-Dade County, Florida.

44. Upon information and belief, Defendant You was and still is officer, director, shareholder, president, sole member, and/or managing member of Aurum Trading.

45. Upon information and belief, Defendant KANGSAN CONSULTING LLC ("Kangsan Consulting") was and still is a domestic limited liability company organized and existing under and by virtue of the laws of the State of New York.

46. Upon information and belief, Kangsan Consulting was and still is a foreign limited liability company authorized to do business under and by virtue of the laws of the State of New York.

47. Upon information and belief, Kangsan Consulting has its principal executive office at 41-23 Murray Street, Suite 201, Flushing, NY 11355.

48. Upon information and belief, Kangsan Consulting conducted and carried on, and still conducts and carries on, business in the State of New York.

49. Upon information and belief, Kangsan Consulting transacted, and still transacts, business within the State of New York.

50. Upon information and belief, Kangsan Consulting derived, and still derives, a substantial amount of revenue from goods used or consumed or services rendered in the State of New York.

51.     Upon information and belief, Kangsan Consulting expected or should have reasonably expected its acts to have consequences in the State of New York.

52.     Kangsan Consulting has been maintaining, and still maintains, continuous and systematic contacts with, and within, the State of New York, and it regularly conducts business in the State of New York.

53.     Upon information and belief, Defendant KANGSAN LEE ("Defendant Lee") was and still is an individual residing in Queens County, New York.

54.     Upon information and belief, Defendant Lee was and still is officer, director, shareholder, president, sole member, and/or managing member of Kangsan Consulting.

55.     Upon information and belief, Defendant Lee was and still is officer, director, shareholder, president, sole member, and/or managing member of L & K.

56.     Upon information and belief, Defendant Lee is Defendant Oh's fiancé.

57.     Upon information and belief, Defendant Lee and Defendant Oh reside together in Long Island City, New York.

58.     Upon information and belief, L & K OFFICE INC. ("L & K") has its principal executive office at 41-23 Murray Street, Suite 201, Flushing, NY 11355.

59.     Upon information and belief, L & K conducted and carried on, and still conducts and carries on, business in the State of New York.

60.     Upon information and belief, L & K transacted, and still transacts, business within the State of New York.

61.     Upon information and belief, L & K derived, and still derives, a substantial amount of revenue from goods used or consumed or services rendered in the State of New York.

62.     Upon information and belief, L & K expected or should have reasonably expected its acts to have consequences in the State of New York.

63.     L & K has been maintaining, and still maintains, continuous and systematic contacts with, and within, the State of New York, and it regularly conducts business in the State of New York.

64.     Upon information and belief, Defendant JIN YOUNG KANG a/k/a JINYOUNG KANG a/k/a JIN Y. KANG ("Defendant Kang") was and still is an individual residing in Queens County, New York.

65.     Upon information and belief, Defendant Kang was and still is officer, director, shareholder, president, sole member, and/or managing member of L & K.

66.     Upon information and belief, Defendant Kang established or incorporated Aurum Trading on behalf of Defendant You, the president and sole shareholder of Aurum Trading.

67.     Upon information and belief, Defendants Lee and Kang are principals of L & K that provides tax and accounting services as IRS Enrolled Agents to their clients, and their clients include Sunrise, Aurum Trading, and Defendant You.

68.     Upon information and belief, Defendant Kang routinely communicated, and still communicates, with Defendant You via email, as Defendant You resides in Florida and travels all over the United States for business purposes.

69.     Upon information and belief, Kangsan Consulting and L & K are located at the same office address, 41-23 Murray Street, Suite 201, Flushing, NY 11355.

## FACTUAL ALLEGATIONS

70.     Plaintiff repeats, reiterates, reincorporates, and realleges the allegations contained in all preceding paragraphs with the same force and effect as if or as though fully set forth herein.

71.     In or around June 2020, Plaintiff had become the sole owner of Sunrise, which provides daycare services to the elderly Korean community in Queens, New York.

72.     In or around February 2022, Plaintiff agreed to sell his entire ownership interest in Sunrise to Defendant Song and Defendant Oh, who were employees of Sunrise at the time.

73.     On or about February 8, 2022, Plaintiff, on one hand, and Defendant Song and Defendant Oh, on the other, entered into a contract under which Defendants Song and Oh would purchase the entire ownership interest in Sunrise from Plaintiff.

74.     On or about February 18, 2022, Plaintiff and Defendants Song and Oh entered into an Amended and Restated Assignment of Membership Interests in furtherance of Defendants Song and Oh's purchase of the entire ownership interest in Sunrise.

75.     Pursuant to the terms and conditions of the contracts, Defendant Song and Defendant Oh would each receive 50% interest in Sunrise from Plaintiff.

76.     Pursuant to the terms and conditions of the contracts, in exchange for the sale of his entire ownership interest to Defendants Song and Oh, Plaintiff would be entitled to all Accounts Receivable of Sunrise incurred on or before February 8, 2022.

77.     On or about February 18, 2022, Closing took place, and Plaintiff only received $2,000.00 in compensation for the sale of his entire ownership interest in Sunrise to Defendants Song and Oh.

78.     Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its new owners – Defendants Song and Oh –

entered into an agreement with Aurum Trading and its owner – Defendant You – under which they conspired to commit money laundering through Aurum Trading and share the proceeds among themselves.

79. Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendants Song and Oh – Aurum Trading and its owner – Defendant You – and Kangsan Consulting and its owner – Defendant Lee – entered into an agreement under which they conspired to commit money laundering, share the proceeds among themselves, and give away cash payouts as "rebates," "kickbacks," or "allowances" to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program.

80. Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendant Song and Oh – Aurum Trading and its owner – Defendant You – Kangsan Consulting and its owner – Defendant Lee – L & K and its principals – Defendants Lee and Kang – entered into an agreement under which they conspired to commit money laundering, share the proceeds among themselves, and give away cash payouts as "kickback," "allowances," "rebates," and/or "referral fees" to Sunrise's elderly clients and other seniors.

81. Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendant Song and Oh – Aurum Trading and its owner – Defendant You – Kangsan Consulting and its owner – Defendant Lee – L & K and its principals – Defendants Lee and Kang – entered into an agreement under which they conspired to create fake invoices in order to disguise those fraudulent transactions as legitimate transactions.

82.     Upon information and belief, Defendants, among themselves, created a system where they create fake invoices under the name of Aurum Trading and forward those fake invoices to Sunrise, so Sunrise, Defendants Song and Oh, Aurum Trading, and Defendant You can disguise those fraudulent, money laundering transactions as legitimate transactions as if those transactions were made for Sunrise's purchase of food products from Aurum Trading.

83.     Upon information and belief, Aurum Trading is not a food manufacturer or distributor, but Aurum Trading disguises itself as a food manufacturer or distributor for the purpose of committing money laundering and engaging in monetary transactions in property derived from specified unlawful activities described herein.

84.     In or about January 2023, Defendants Song and Oh, by presenting those fake invoices, or causing them to be presented, to Plaintiff, claimed that they made those payments to Aurum Trading during the period March 2022 through May 2022.

85.     In or about January 2023, Defendants Song and Oh, by presenting those fake invoices, or causing them to be presented, to Plaintiff, claimed that Plaintiff withheld the existence of Sunrise's Accounts Payable at the time of Closing; therefore, Defendants Song and Oh were not obligated to honor the terms and conditions of the contracts under which Defendants Song and Oh were required to pay all Accounts Receivable of Sunrise incurred on or before February 8, 2022, which consisted of insurance reimbursement payments, to Plaintiff.

86.     Upon information and belief, during the period March 2022 through May 2022, Sunrise and Defendants Song and Oh either made multiple wire transactions or issued multiple checks to Aurum Trading to its various bank accounts at TD Bank, Bank of America, Wells Fargo, Chase, and Citibank in the total amount of $371,661.46 as if those transactions were made for Sunrise's purchase of food products from Aurum Trading.

87.    Upon information and belief, Aurum Trading and its principal – Defendant You – then retained, and still retain, 8% to 12% as their "commissions" or "kickbacks," depending on the amounts, and tendered, and still tenders, 88% to 92% of the amounts in cash to Kangsan Consulting and its owner – Defendant Lee – by transporting the cash and traveling interstate from Florida to New York on a monthly basis.

88.    Upon information and belief, Defendant You traveled, and still travels, from Florida to New York with cash in excess of $5,000.00 on a monthly basis to tender cash to Kangsan Consulting and its owner – Defendant Lee.

89.    Upon information and belief, Kangsan Consulting and its principal – Defendant Lee – then retained, and still retain, certain portions of that 88% to 92% cash as their "commissions" or "kickbacks" and distributed, and still distribute, the remaining portions to Sunrise's elderly clients and other seniors as "rebates," "kickbacks," or "allowances" in cash for the purpose of inducing them to remain as Sunrise's clients or to enroll in Sunrise's senior care program.

90.    Upon information and belief, the cash distributions and payouts occurred, and still occur, on a monthly basis, at the office address, 41-23 Murray Street, Suite 201, Flushing, NY 11355, at which both Kangsan Consulting and L & K are located.

91.    Upon information and belief, when giving away cash payouts to Sunrise's elderly clients and other seniors, Kangsan Consulting and Defendant Lee induced, and still induce, those elderly clients to get certain pharmaceutical products and/or prescription medications that have a high profit margin from various pharmacies in Queens, New York, including Amazing Care Pharmacy Inc., located at 135-24 Roosevelt Ave., Flushing, NY 11354.

92.    Upon information and belief, when those elderly clients get certain products and/or prescription medications specified by Kangsan Consulting and Defendant Lee from various

pharmacies in Queens, New York, those pharmacies make a high margin of profits. For example, upon information and belief, if a pharmacy provides a product or prescription medication that is worth $50.00 to an elderly person, the pharmacy makes a claim with the elderly person's insurance carrier for up to $200.00, thereby making a profit margin of $150.00 per product or prescription medication.

93.     Upon information and belief, once those pharmacies have made, or make, a high margin of profits, they paid, and still pay, certain portions of that profits to Kangsan Consulting and Defendant Lee in cash as "rebates," "kickbacks," or "referral fees."

94.     Upon information and belief, Kangsan Consulting and Defendant Lee received, and still receive, certain portions of the profits that various pharmacies made, or make, in cash as "rebates," "kickbacks," or "referral fees."

95.     Upon information and belief, when giving away cash payouts to Sunrise's elderly clients and other seniors, Kangsan Consulting and Defendant Lee solicited, and still solicit, those elderly clients and seniors to get home care services and referred, and still refer, them to various home care service companies affiliated with Defendant Lee.

96.     Upon information and belief, the home care service companies did not, and do not, actually perform any home care services for those elderly clients and seniors, but they falsely represented, and falsely represent, to various insurance companies that they have performed home care services for those elderly clients and seniors in order to receive insurance reimbursement payments under the Federal Medicaid and/or Medicare programs.

97.     Upon information and belief, the insurance reimbursement payments that those home care companies fraudulently received were then used to financially benefit Defendant Lee and the businesses he owns, namely, Kangsan Consulting and L & K, and to pay more cash to

those elderly clients and seniors in order to induce them to either remain as Sunrise's client or to enroll in Sunrise's senior care program.

98.     Upon information and belief, Kangsan Consulting and Defendant Lee distributed, and still distribute, approximately $1,000.00 in cash each month to those elderly clients and other seniors at the office address, 41-23 Murray Street, Suite 201, Flushing, NY 11355, at which both Kangsan Consulting and L & K are located.

99.     Upon information and belief, Defendants created the system described herein to entice seniors to enroll in Sunrise's senior care program by giving away cash payouts in the form of "rebates," "kickbacks," or "allowances."

100.    Upon information and belief, Defendants' activities of money laundering and giving away cash distributions and payouts enabled Defendants to entice seniors to enroll in Sunrise's senior care program or to remain as Sunrise's clients while Defendants secretly gained financial benefits for themselves.

101.    Upon information and belief, many of Sunrise's clients are residents of New Jersey, and they travelled, and still travel, to Flushing, New York, in order to receive the monthly cash distributions and payouts.

102.    Upon information and belief, these seniors were convinced to join, or remain as clients of, Sunrise and then referred to other managed care companies for other services, such as home care services or at-home nursing aides.

103.    Upon information and belief, the principals of Sunrise, Aurum Trading, Kangsan Consulting, and L & K engaged in a pattern of racketeering activities and fraudulent schemes to divert a substantial amount of money in government funds, such as collusive money laundering arrangements, including laundering money by converting the insurance reimbursement payments

Sunrise received from various insurance companies under the Federal Medicaid and/or Medicare programs into cash and sharing the cash among themselves for their own financial benefits, distributing and giving away cash payouts to Sunrise's elderly clients and other seniors, giving and receiving "rebates," "kickbacks," and/or "referral fees," transporting stolen money and traveling interstate in furtherance of their scheme or artifice, keeping those cash for their own financial benefits, falsifying business records, receipts, and invoices, and paying themselves a substantial amount of money for work that was not performed or otherwise they are not entitled to.

104.    Upon information and belief, Defendants conspired among themselves to create fake invoices in order to disguise the fraudulent, money laundering transactions as legitimate transactions, as if Sunrise's issuances of various checks or wires to Aurum Trading were legitimate transactions, and in doing so, Sunrise, Defendant Song, and Defendant Oh used those fake invoices to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022.

105.    L & K and its principals – Defendants Lee and Kang – who provide tax and accounting services to Sunrise, Aurum Trading, and Defendant You, as IRS Enrolled Agents, did create fake invoices, retroactively, under the name of Aurum Trading and disseminated said fake invoices to Sunrise and ultimately to Plaintiff.

106.    Said fake invoices were used as a vehicle for Defendants not only to launder money by converting the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and/or Medicare programs into cash and use the cash to pay Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances," but also to defraud Plaintiff by depriving Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

107. Upon information and belief, those fake invoices were willfully and fraudulently created by Defendants not only to commit money laundering, so that the money wired by Sunrise to Aurum Trading can be converted into cash for distribution purposes, but also to defraud Plaintiff.

108. Upon information and belief, Sunrise, Aurum Trading, and Defendant You were, and still are, L & K's clients, and L & K provided, and still provides, tax advice and accounting services to Sunrise, Aurum Trading, and Defendant You.

109. On or about December 1, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00007; Purchase Order # 23748 – in the amount of $7,107.00 to Sunrise.

110. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 1, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:27 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

111. On or about December 2, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00013; Purchase Order # 23758 – in the amount of $8,512.00 to Sunrise.

112. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 2, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:34 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

113. On or about December 3, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00024; Purchase Order # 23760 – in the amount of $6,930.00 to Sunrise.

114. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 3, 2021 invoice, using L & K's computer, named,

LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:44 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

115. On or about December 6, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00029; Purchase Order #23768 – in the amount of $16,090.00 to Sunrise.

116. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 6, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:16 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

117. On or about December 6, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00028; Purchase Order # 23767 – in the amount of $5,367.00 to Sunrise.

118. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 6, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:12 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

119. On or about December 7, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00032; Purchase Order # 23770 – in the amount of $5,264.00 to Sunrise.

120. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 7, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:21 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

121. On or about December 8, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00036; Purchaser Order # 23773 – in the amount of $8,824.00 to Sunrise.

122.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 8, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around January 9, 2023, at or around 5:23:37 p.m., for the purpose of defrauding Plaintiff and commit money laundering.

123.     On or about December 9, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00040; Purchase Order # 23777 – in the amount of $8,602.00 to Sunrise.

124.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 9,2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:45 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

125.     On or about December 10, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00043; Purchase Order # 23780 – in the amount of $9,496.00 to Sunrise.

126.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 10, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:53 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

127.     On or about December 13, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00048; Purchase Order # 23784 – in the amount of $7,350.00 to Sunrise.

128.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 13, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:25:01 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

129. On or about December 14, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00050; Purchase Order # 23787 – in the amount of $7,373.00 to Sunrise.

130. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 14, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:26:28 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

131. On or about December 15, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00053; Purchase Order # 23790 – in the amount of $5,612.00 to Sunrise.

132. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 15, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:26:37 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

133. On or about December 15, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00054; Purchase Order # 23792 – in the amount of $8,315.00 to Sunrise.

134. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 15, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:27:30 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

135. On or about December 16, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00057; Purchase Order # 23794 – in the amount of $7,066.50 to Sunrise.

136. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 16, 2021 invoice, using L & K's computer,

named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:27:37 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

137.    On or about December 16, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00058; Purchase Order # 23796 – in the amount of $4,736.00 to Sunrise.

138.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 16, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:11 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

139.    On or about December 17, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00061; Purchase Order # 23800 – in the amount of $5,501.90 to Sunrise.

140.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 17, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:19 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

141.    On or about December 20, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00066; Purchase order # 23804 – in the amount of $6,171.00 to Sunrise.

142.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 20, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:29 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

143.    On or about December 21, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00069; Purchase Order # 23808 – in the amount of $6,089.50 to Sunrise.

144. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 21, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:37 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

145. On or about December 22, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00073; Purchase Order # 23811 – in the amount of $8,695.50 to Sunrise.

146. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 22, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:46 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

147. On or about December 23, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00077; Purchase Order # 23817 – in the amount of $6,406.10 to Sunrise.

148. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulent created the December 23, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:54 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

149. On or about December 24, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00079; Purchase Order # 23820 – in the amount of $8,493.00 to Sunrise.

150. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 24, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:01 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

151.     On or about December 27, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00080; Purchase Order # 23822 – in the amount of $5,441.00 to Sunrise.

152.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 27, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:10 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

153.     On or about December 28, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00083; Purchase Order # 23825 – in the amount of $8,143.00 to Sunrise.

154.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 28, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:18 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

155.     On or about December 29, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00085; Purchase Order # 23828 – in the amount of $8,641.40 to Sunrise.

156.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 29, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:27 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

157.     On or about December 30, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00088; Purchase Order # 23829 – in the amount of $5,332.00 to Sunrise.

158.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 30, 2021 invoice, using L & K's computer,

named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:36 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

159.     On or about December 31, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00091; Purchase Order # 23834 – in the amount of $6,848.00 to Sunrise.

160.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 31, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:43 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

161.     On or about January 3, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00004; Purchase Order #23839 – in the amount of $6,475.00 to Sunrise.

162.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 3, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:53 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

163.     On or about January 4, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00007; Purchase Order # 23841 – in the amount of $5,054.00 to Sunrise.

164.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 4, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:01 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

165.     On or about January 5, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00009; Purchase Order # 23844 – in the amount of $6,230.00 to Sunrise.

166. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 5, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:08 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

167. On or about January 6, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00012; Purchase Order # 23848 – in the amount of $7,166.00 to Sunrise.

168. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 6, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:17 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

169. On or about January 7, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00015; Purchase Order # 23854 – in the amount of $9,862.00 to Sunrise.

170. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 7, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:22:56 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

171. On or about January 7, 2022, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00016; Purchase Order # 23855 – in the amount of $16,090.00 to Sunrise.

172. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 7, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:34 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

173.     On or about January 10, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00017; Purchase Order # 23857 – in the amount of $6,737.50 to Sunrise.

174.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 10, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:42 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

175.     On or about January 11, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00020; Purchase Order # 23859 – in the amount of $8,205.20 to Sunrise.

176.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 11, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:52 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

177.     On or about January 12, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00023; Purchase Order # 23862 – in the amount of $6,973.00 to Sunrise.

178.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 12, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:59 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

179.     On or about January 13, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00026; Purchase Order # 23865 – in the amount of $7,829.00 to Sunrise.

180.     Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 13, 2022 invoice, using L & K's computer, named,

LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:07 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

181.    On or about January 14, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00029; Purchase Order # 23866 – in the amount of $7,710.00 to Sunrise.

182.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 14, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:15 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

183.    On or about January 17, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00033; Purchase Order # 23868 – in the amount of $6,245.00 to Sunrise.

184.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 17, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:23 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

185.    On or about January 18, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00036; Purchase Order # 23872 – in the amount of $6,322.50 to Sunrise.

186.    Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 18, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:31 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

187.    On or about January 19, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00039; Purchase Order # 23874 – in the amount of $7,767.30 to Sunrise.

188. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 19, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:39 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

189. On or about January 20, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00042; Purchase Order # 23877 – in the amount of $6,823.30 to Sunrise.

190. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 20, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:46 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

191. On or about January 21, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00046; Purchase Order # 23882 – in the amount of $9,222.00 to Sunrise.

192. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 21, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:55 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

193. On or about January 24, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00048; Purchase Order # 23885 – in the amount of $7,443.00 to Sunrise.

194. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 24, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:09 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

195.     On or about January 25, 2022, Aurum Trading purportedly issued a fake invoice –
Invoice # INV-00051; Purchase Order # 23888 – in the amount of $7,941.00 to Sunrise.

196.     Upon information and belief, L & K and its principals – Defendants Lee and Kang
– willfully and fraudulently created the January 25, 2022 invoice, using L & K's computer, named,
LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or
around 5:32:17 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

197.     On or about January 26, 2022, Aurum Trading purportedly issued a fake invoice –
Invoice # INV-00053; Purchase Order # 23893 – in the amount of $8,098.00 to Sunrise.

198.     Upon information and belief, L & K and its principals – Defendants Lee and Kang
– willfully and fraudulently created the January 26, 2022 invoice, using L & K's computer, named,
LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or
around 5:32:26 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

199.     On or about January 27, 2022, Aurum Trading purportedly issued a fake invoice –
Invoice # INV-00056; Purchase Order # 23896 – in the amount of $5,224.70 to Sunrise.

200.     Upon information and belief, L & K and its principals – Defendants Lee and Kang
– willfully and fraudulently created the January 27, 2022 invoice, using L & K's computer, named,
LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or
around 5:32:34 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

201.     On or about January 28, 2022, Aurum Trading purportedly issued a fake invoice –
Invoice # INV-00059; Purchase Order # 23901 – in the amount of $5,623.00 to Sunrise.

202.     Upon information and belief, L & K and its principals – Defendants Lee and Kang
– willfully and fraudulently created the January 28, 2022 invoice, using L & K's computer, named,

LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:41 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

203. On or about January 31, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00063; Purchase Order # 23904 – in the amount of $6,338.00 to Sunrise.

204. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 31, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:49 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

205. On or about February 1, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00004; Purchase Order # 23907 – in the amount of $13,875.00 to Sunrise.

206. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the February 1, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:07 p.m., for the purpose of defrauding Plaintiff and to commit money laundering.

207. From December 1, 2021 to February 1, 2022, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46.

208. Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created forty-nine (49) fake invoices in the total amount of $371,661.46, as if those invoices were issued by Aurum Trading, which is L & K's client, to Sunrise.

209.  Said forty-nine (49) fake invoices contained, and still contain, multiple false pretenses – names or types of products Sunrise purportedly purchased from Aurum Trading – as if those invoices were for Sunrise's purchase of food products from Aurum Trading.

210.  Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – acting in concert with each other in the manner described herein, defrauded Plaintiff.

211.  Upon information and belief, Defendants' shared, common objective was to financially enriching themselves by engaging in the described pattern of racketeering activities, and in doing so, Defendants intentionally and fraudulently targeted Plaintiff and decided to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022 to which Plaintiff was, and still is, entitled by claiming that Plaintiff concealed the existence of Sunrise's Accounts Payable in the amount of $371,661.46, the total amount of the fake invoices created by L & K and its principals under the name of Aurum Trading.

212.  Upon information and belief, Defendants' shared, common objective was to financially enriching themselves by engaging in the described pattern of racketeering activities, and in doing so, Defendants intentionally and fraudulently deprived Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022 to which Plaintiff was, and still is, entitled so that Defendants could use those monies to financially enrich themselves.

213.  Upon information and belief, by creating, forging, counterfeiting, and disseminating fake invoices, created by L & K and its principals, as if those invoices were issued by Aurum Trading, Defendants not only enabled themselves to launder money for their own

financial benefits, but also enabled Sunrise and its principals to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022.

214.    Upon information and belief, Defendants converted a substantial amount of Medicaid and/or Medicare funds to enrich themselves, their families, and business associates through an elaborate network of related companies and collusive, fraudulent transactions, rather than use the funds for their intended purposes.

215.    Upon information and belief, Defendants, by acting in concert with each other, knowingly submitted, or caused to be submitted, false claims and that they made misrepresentations of fact to obtain Federal health care payments for which no entitlement would otherwise exist.

216.    Upon information and belief, by falsely claiming that Sunrise's elderly clients were physically present at the senior care facilities of Sunrise when they were not, Sunrise, Defendant Song, and Defendant Oh, acting in concert with each other, knowingly submitted, or caused to be submitted, false claims and that they made misrepresentations of fact to obtain Federal health care payments for which no entitlement would otherwise exist.

217.    Upon information and belief, Defendants knowingly solicited, received, offered, or paid remuneration, such as "kickbacks," "referral fees," or "rebates," to induce or reward referrals for items or services reimbursed by Federal health care programs.

218.    Upon information and belief, Defendants knowingly billed for services not furnished, supplies not provided, or both, including falsifying records to launder money for their own financial benefits and claiming that Sunrise's clients were physical present at the senior care facilities of Sunrise when they were not, and that they paid for referrals of Federal health care program beneficiaries.

219. Upon information and belief, Defendants wove a complicated web of fraudulent financial schemes to siphon money for their own financial benefits.

220. But for Defendants' deceptive and fraudulent conduct and behavior described in this Complaint, Plaintiff would not have been injured.

221. Defendants' violations of 18 U.S.C. §§ 1962(c) and (d) led directly to Plaintiff's injuries.

222. But for Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff would not have been injured in his business or property.

223. The injury to Plaintiff was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

224. As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Plaintiff has suffered, and continues to suffer, damages in his business or property.

## FIRST CAUSE OF ACTION
**(Federal Civil RICO, 18 U.S.C. § 1962[c])**

225. Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

226. Defendants violated RICO, and Plaintiff was injured as a result.

227. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

228. Each Defendant violated 18 U.S.C. § 1962(c) by the acts described in the preceding paragraphs, and as further described below.

229. **The Enterprise**. Defendants Song, Defendant Oh, Defendant You, Defendant Lee, and Defendant Kang, together with (1) Sunrise; (2) one or more officers and/or directors of Sunrise;

34

(3) one or more former officers and/or directors of Sunrise; (4) one or more employees of Sunrise; (5) Aurum Trading; (6) one or more officers and/or directors of Aurum Trading; (7) one or more former officers and/or directors of Aurum Trading; (8) one or more employees of Aurum Trading; (9) Kangsan Consulting; (10) one or more officers and/or directors of Kangsan Consulting; (11) one or more former officers and/or directors of Kangsan Consulting; (12) one or more employees of Kangsan Consulting; (13) L & K; (14) one or more officers and/or directors of L & K; (15) one or more former officers and/or directors of L & K; (16) one or more employees of L & K; and/or (17) Does 1 through 50, inclusive, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activities. The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activities. There may also be other members of the enterprise who are unknown at this time.

230.    Alternatively, Sunrise itself constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

231.    Alternatively, Sunrise and its principals – Defendant Song and Defendant Oh – together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

232.    Alternatively, Aurum Trading itself constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

233.    Alternatively, Aurum Trading and its principal – Defendant You – together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

234.    Alternatively, Kangsan Consulting itself constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

235. Alternatively, Kangsan Consulting and its principal – Defendant Lee – together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

236. Alternatively, L & K itself constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

237. Alternatively, L & K and its principals – Defendant Lee and Defendant Kang – together constitute an enterprise within the meaning of 18 U.S.C. § 1961(4).

238. Defendant Lee is the principal of Kangsan Consulting, and he is also one of the principals of L & K.

239. Kangsan Consulting and L & K share the common address, 41-23 Murray Street, Suite 201, Flushing, NY 11355.

240. Defendants Lee and Kang are licensed Enrolled Agents providing tax advice and accounting services to their clients, including Sunrise, Aurum Trading, and Defendant You.

241. Upon information and belief, Defendant You transported, and still transports, stolen money by traveling interstate from Florida to New York on a monthly basis so that he can tender cash to Defendant Lee in Flushing, New York.

242. Upon information and belief, Defendant Lee met, and still meets, with Defendant You on a monthly basis so that he can receive the transported cash from Defendant You in Flushing, New York.

243. Upon information and belief, the office space, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, is the place where Kangsan Consulting and Defendant Lee distributed, and still distribute, cash payouts to Sunrise's elderly clients and other seniors.

244. Upon information and belief, when Kangsan Consulting and Defendant Lee distributed, or distribute, cash payouts to Sunrise's elderly clients and other seniors, Defendant

Lee represented, and still represent, to those elderly clients and seniors that they are not going to get into any trouble for receiving cash because it is coming from a licensed tax professional, referring to himself.

245.    The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

246.    The members of the enterprise – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – joined together as a group to: (a) launder insurance reimbursements payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs to financially enrich themselves; (b) create fake invoices to disguise those fraudulent, money laundering transactions as legitimate transactions; (c) distribute cash payouts to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program to financially enrich Sunrise, Defendant Song, and Defendant Oh; (d) make false or fraudulent claims to various insurance companies by claiming that elderly clients were present at Sunrise's senior care facilities when they were not to financially enrich Sunrise, Defendant Song, and Defendant Oh; (e) give, receive, or otherwise share "rebates," "kickbacks," or "referral fees" among themselves to financially enrich themselves; (f) transport stolen money by traveling interstate from Florida to New York; (g) receive "rebates," kickbacks," or "referral fees" from various pharmacies and home care service companies affiliated with them; and (h) conspire in a coordinated scheme to defraud the Medicaid and Medicare programs.

247. The members of the enterprise – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – were, and still are, a separate and distinct assortment of private individuals and corporations or limited liability companies and that they were, and still are, separate, culpable parties.

248. The members of the enterprise shared a common purpose to engage in the particular course of conduct described in this Complaint and worked together as a continuing unit to achieve their goal of financially enriching themselves in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

249. Each Defendant participated, and still participates, in the operation or management of the alleged RICO enterprise.

250. Even without the alleged predicate acts, the RICO enterprise existed, and continues to exist, in continuity separate and distinct from the alleged predicate acts.

251. Each enterprise has engaged in, and their activities have affected, interstate commerce, as described herein.

252. **Pattern of Racketeering Activity**. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

253. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. § 1961(1)(B), as more specifically alleged below. Defendants each committed at least two such acts or else aided and abetted such acts.

254. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately March 2022 and is ongoing still, and there is a continued threat of repetition of such conduct.

255. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to the predicate acts and extended beyond the racketeering activity.

256. Plaintiff specifically alleges that Defendants participated in the operation and management of the association-in-fact enterprise and the alternative enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

257. **Predicate Act: Fraud by Wire, Radio, or Television in Violation of 18 U.S.C. § 1343.** 18 U.S.C. § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343.

258. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 on multiple occasions in that they devised or intended to devise a scheme or artifice to convert the

insurance reimbursement payments Sunrise received from various insurance companies into cash for their own financial benefits and cash distributions and payouts.

259. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 on multiple occasions in that they devised or intended to devise a scheme or artifice to defraud Plaintiff by means of false and fraudulent pretenses, representations, or promises for obtaining Plaintiff's money or property.

260. For the purpose of executing their scheme or artifice, Defendants not only created fake invoices, which contained multiple false pretenses, but also caused delivery of those fake invoices, as if those invoices originated from Aurum Trading for legitimate transaction purposes, by the use of wires, to wit: emails and text messages.

261. For the purpose of executing their scheme or artifice, Defendants created fake invoices in order to disguise the fraudulent, money laundering transactions as legitimate transactions and transmitted, or caused them to be transmitted, to Florida, New York, and Pennsylvania by the use of wire communications.

262. For the purpose of executing their scheme or artifice, Defendants caused delivery of various documents, such as fake invoices, purportedly issued by Aurum Trading for Sunrise' purported purchase of food products from Aurum Trading, as if those invoices were legitimate documents by the use of the wires or received such therefrom.

263. Said forty-nine (49) fake invoices contained multiple false pretenses – names or types of food products Sunrise purportedly purchased from Aurum Trading – when in fact Sunrise never purchased such products from Aurum Trading.

264. The purported December 6, 2021 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

265. The purported January 7, 2022 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

266. The purported February 1, 2022 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

267. These further demonstrate that the invoices were intentionally and fraudulently created and that L & K and its principals – Defendant Lee and Kang – were not thorough enough in creating fake invoices under the name of Aurum Trading.

268. Defendants transmitted, or caused to be transmitted, by means of wire communications in interstate commerce these fake invoices purported to be legitimate documents. The acts of Defendants set forth above were done with the knowledge that the use of the wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

269. Defendants' use of the wire communications was in furtherance of their scheme to convert the insurance reimbursement payments Sunrise received under the Federal Medicaid and Medicare programs for their own financial benefits and to defraud Plaintiff by depriving Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, to which Plaintiff was and still is entitled.

270.     Upon information and belief, in furtherance of their scheme alleged herein, Defendants communicated among themselves by the use of the interstate wire, these communications were typically transmitted by wire (*i.e.*, electronically), and Defendants also transmitted, or caused to be transmitted, by wire communications among Defendants and/or with unknown officers, directors, and/or agents in furtherance of their scheme alleged herein.

271.     Defendants carried out their scheme in different States, including, but not limited to, New York, Florida, and Pennsylvania, and could not have done so unless they used interstate wires.

272.     Specifically, upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created forty-nine (49) fake invoices, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, from at or around 5:22:56 to at or around 5:32:49, and used wire communication, to wit: email, to transmit those fake invoices on that same day to Defendant You, who was located in Florida.

273.     In his sworn testimony, which took place on January 22, 2024, Defendant Kang admitted that he routinely communicated, and communicates, with Defendant You via email, as Defendant You resides in Florida.

274.     Upon information and belief, Defendant You, upon receipt of the fake invoices from L & K and Defendants Lee and Kang, transmitted those fake invoices, or caused them to be transmitted, to Sunrise, located in Flushing, New York, by the use of wire communications, to wit: via email, on or about January 9, 2023.

275.     Upon information and belief, in or about January 2023, Sunrise and its principals – Defendants Song and Oh – with the knowledge that those invoices were fraudulently created by L

& K and its principals for the purpose of disguising the fraudulent, money laundering transactions as legitimate transactions and for the purpose of depriving Plaintiff, knowingly and intentionally caused those fake invoices to be transmitted via wire communication, to wit: via email, to Plaintiff.

276.    Upon information and belief, Sunrise and its principals – Defendants Song and Oh – with the knowledge that those invoices were fraudulently created by L & K and its principals and that those fake invoices were transmitted to Defendant You, located in Florida, via wire communication, used those fake invoices not only to disguise the fraudulent, money laundering transactions as legitimate ones, but also to defraud Plaintiff, who resides in Philadelphia, Pennsylvania, claiming that they were not obligated to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022 to Plaintiff because Plaintiff concealed the existence of Sunrise's Accounts Payable at the time of Closing.

277.    Defendants' shared, objective was, and is, to convert the insurance reimbursement payments for their own financial benefits, deprive Plaintiff of Sunrise's Accounts Receivable to which Plaintiff was, and still is, entitled, and further launder those monies for their own financial benefits.

278.    **Predicate Act: Laundering of Monetary Instruments in Violation of 18 U.S.C. § 1956.**  18 U.S.C. § 1956(a) provides that whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity, or with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986, or knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified

unlawful activity or to avoid a transaction reporting requirement under State or Federal law, shall be sentenced to a fine of not more than $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty (20) years, or both. 18 U.S.C. § 1956.

279.     Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that they knowingly conducted multiple financial transactions described in this Complaint, that the transactions in fact involved the proceeds of programs receiving Federal funds, as defined in 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds), namely, Medicaid and Medicare programs for senior daycare providers, and that Defendants knew that the funds involved in the financial transactions represented the proceeds of unlawful activities.

280.     18 U.S.C. § 666 provides that "[w]hoever, if the circumstances described in subsection (b) of this section exists…, being an agent of an organization… embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that… is valued at $5,000 or more, and … is owned by, or is under the care, custody, or control of such organization…" "The circumstances referred to in subsection (a) of this section is that the organization… receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

281.     Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that they knowingly conducted multiple financial transactions described in this Complaint, that the transactions in fact involved the proceeds of unlawful activity, to wit: wire fraud and theft concerning programs receiving Federal funds, and that Defendants knew that the funds involved in the financial transactions represented the proceeds of unlawful activities.

282.    That is, Defendants knowingly conducted multiple financial transactions where (a) Sunrise and Defendants Song and Oh wire certain amounts to Aurum Trading during the period March 2022 through May 2022; (b) L & K and Defendants Lee and Kang willfully and fraudulently create multiple fake invoices, retroactively, under the name of Aurum Trading and forward those fake invoices to Defendant You, who is in Florida, via email; (c) Defendant You, upon receipt of said fake invoices, forward them to Sunrise and Defendants Song and Oh in Flushing, New York, via email; (d) Aurum Trading and Defendant You keep 8 % to 12% of the wired amounts as "commissions" or "kickbacks"; (e) Defendant You transports 88% to 92% of the wired amounts in cash by traveling from Florida to New York on a monthly basis; (f) Aurum Trading and Defendant You tender 88% to 92% of the wired amounts in cash to Kangsan Consulting and Defendant Lee in Flushing, New York; (g) Kangsan Consulting and Defendant Lee keep certain portions of the cash tendered by Aurum Trading and Defendant You and distribute the remaining portions to Sunrise's elderly clients and other seniors in cash as "rebates," "kickbacks," or "allowances"; (h) Kangsan Consulting and Defendant Lee induce Sunrise's elderly clients to get certain pharmaceutical products and/or prescription medications that yield a high profit margin from various pharmacies in Queens, New York; and (i) in return, those pharmacies in Queens, New York, pay certain portions of the profits they have made to Kangsan Consulting and Defendant Lee as "commissions," "kickbacks," or "referral fees."

283.    In conducting the fraudulent financial transactions described herein, Defendants knew that the invoices created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, were fake invoices, disguised as Sunrise's purchase of food products from Aurum Trading.

284.    Sunrise, Defendant Song, and Defendant Oh knew that the wired funds were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of money laundering and cash distributions and payouts.

285.    Aurum Trading and Defendant You knew that the funds wired to Aurum Trading's bank accounts at TD Bank, Bank of America, Wells Fargo, Chase, and Citibank were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of money laundering and cash distributions and payouts.

286.    Aurum Trading and Defendant You knew that the funds they converted into cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

287.    Kangsan Consulting and Defendant Lee knew that the funds they received in cash from Aurum Trading and Defendant You were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

288.    Kangsan Consulting and Defendant Lee knew that the funds they distributed to Sunrise's elderly clients and other seniors in cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers

Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

289.     Defendants knew that pursuant to the Medicaid and Medicare programs, wiring said funds to Aurum Trading and Defendant You based on the fake invoices, created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, for the purpose of money laundering and cash distributions and payouts was in and of itself an illegal activity, or that their transfer of said funds to Aurum Trading and Defendant You was designed in whole or in part to disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity.

290.     In conducting fraudulent financial transactions described herein, Aurum Trading and Defendant You knew that the monies they received from Sunrise were designed in whole or in part to disguise the nature and the source of the proceeds of unlawful activity in that Aurum Trading and Defendant You knew that the invoices purportedly issued by Aurum Trading were fake invoices and that Aurum Trading was and still is not a food manufacturer or distributor.

291.     Aurum Trading and Defendant You knew that the transaction or conduct of keeping 8% to 12% of the wired monies in and of itself was an illegal activity and that said transaction was designed in whole or in part to conceal or disguise the nature, the source, and the ownership of the proceeds of unlawful activity or that Aurum Trading and Defendant You kept 8% to 12% of the wired monies with the intent to promote the carrying on of converting wired monies into cash for their own financial benefits.

292.     In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the cash they received from Aurum Trading and Defendant You represented the proceeds of unlawful activity of converting the insurance

reimbursement payments Sunrise received from various insurance companies into cash for the purpose of financially enriching themselves and other Defendants involved in the transaction and distributing said cash to Sunrise's elderly clients in the form of cash "rebates," "kickbacks," or "allowances."

293.    In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the transaction was designed in whole or in part to conceal the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received under the Federal Medicaid and Medicare programs into cash for their own financial benefits.

294.    In conducting fraudulent financial transactions described herein, Defendants knew that giving and receiving "rebates," "kickbacks," or "referral fees" was in and of itself an illegal activity.

295.    In conducting fraudulent financial transactions described herein, Defendants knew the existence of the contracts between Plaintiff and Defendants Song and Oh under which Defendants Song and Oh were required to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

296.    In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired to Aurum Trading and Defendant You were used for the purpose of money laundering and to financially benefit Defendants instead of paying Plaintiff.

297.    In conducting fraudulent financial transactions described herein, Defendants knew that portions, if not all, of the funds wired, distributed, and shared among Defendants belonged to Plaintiff under the contracts between Plaintiff and Defendants Song and Oh.

298.     In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate 18 U.S.C. § 666 and defraud Plaintiff.

299.     In conducting fraudulent financial transactions described herein, Defendants made wire and cash transactions involving the proceeds of the scheme to siphon money that Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits, a scheme that was furthered by the use of the wire communications, with the knowledge that the transactions represented the proceeds of that scheme and with the further knowledge that these transactions, which involved $371,661.46, were intended to disguise both the source and destination of the stolen money.

300.     **Predicate Act: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in Violation of 18 U.S.C. § 1957.**  18 U.S.C. § 1957 provides that "[w]hoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished." 18 U.S.C. § 1957(a).  "[T]he term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument (as defined in section 1956(c)(5) of this title) by, through, or to a financial institution (as defined in section 1956 of this title, including any transaction that would be a financial transaction under section 1956(c)(4)(B) of this title…" 18 U.S.C. § 1957(f)(1).

301.     Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1957 in that they knowingly conducted multiple financial transactions described in this Complaint, that the transactions in fact involved the proceeds of programs receiving Federal funds, as defined in 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds), namely,

Medicaid and Medicare programs for senior daycare providers, and that Defendants knew that the funds involved in the financial transactions represented the proceeds of unlawful activities.

302. 18 U.S.C. § 666 provides that "[w]hoever, if the circumstances described in subsection (b) of this section exists…, being an agent of an organization… embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that… is valued at $5,000 or more, and … is owned by, or is under the care, custody, or control of such organization…" "The circumstances referred to in subsection (a) of this section is that the organization… receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

303. That is, Defendants knowingly conducted multiple financial transactions where (a) Sunrise and Defendants Song and Oh wire certain amounts to Aurum Trading during the period March 2022 through May 2022; (b) L & K and Defendants Lee and Kang willfully and fraudulently create multiple fake invoices, retroactively, under the name of Aurum Trading and forward those fake invoices to Defendant You, who is in Florida, via email; (c) Defendant You, upon receipt of said fake invoices, forward them to Sunrise and Defendants Song and Oh in Flushing, New York, via email; (d) Aurum Trading and Defendant You keep 8 % to 12% of the wired amounts as "commissions" or "kickbacks"; (e) Defendant You transports 88% to 92% of the wired amounts in cash by traveling from Florida to New York on a monthly basis; (f) Aurum Trading and Defendant You tender 88% to 92% of the wired amounts in cash to Kangsan Consulting and Defendant Lee in Flushing, New York; (g) Kangsan Consulting and Defendant Lee keep certain portions of the cash tendered by Aurum Trading and Defendant You and distribute the remaining portions to Sunrise's elderly clients and other seniors in cash as "rebates," "kickbacks," or

"allowances"; (h) Kangsan Consulting and Defendant Lee induce Sunrise's elderly clients to get certain pharmaceutical products and/or prescription medications that yield a high profit margin from various pharmacies in Queens, New York; and (i) in return, those pharmacies in Queens, New York, pay certain portions of the profits they have made to Kangsan Consulting and Defendant Lee as "commissions," "kickbacks," or "referral fees."

304. In conducting the fraudulent financial transactions described herein, Defendants knew that the invoices created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, were fake invoices, disguised as Sunrise's purchase of food products from Aurum Trading.

305. Sunrise, Defendant Song, and Defendant Oh knew that the wired funds were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of money laundering and cash distributions and payouts.

306. Aurum Trading and Defendant You knew that the funds wired to Aurum Trading's bank accounts were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of money laundering and cash distributions and payouts.

307. Aurum Trading and Defendant You knew that the funds that Aurum Trading and Defendant You converted into cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy

Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were converted into cash for the purpose of money laundering and cash distributions and payouts.

308.    Kangsan Consulting and Defendant Lee knew that the funds they received in cash from Aurum Trading and Defendant You were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were converted into cash for the purpose of money laundering and cash distributions and payouts.

309.    Kangsan Consulting and Defendant Lee knew that the funds they distributed to Sunrise's elderly clients in cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

310.    Defendants knew that pursuant to the Medicaid and Medicare programs, wiring said funds to Aurum Trading based on the fake invoices, created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, for the purpose of money laundering and cash distributions and payouts was in and of itself an illegal activity, or that their transfer of said funds to Aurum Trading and Defendant You was designed in whole or in part to disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity.

311.    In conducting fraudulent financial transactions described herein, Aurum Trading and Defendant You knew that the monies they received from Sunrise and Defendants Song and Oh were designed in whole or in part to disguise the nature and the source of the proceeds of

unlawful activity in that Aurum Trading and Defendant You knew that the invoices purportedly issued by Aurum Trading were fake invoices and that Aurum Trading was and still is not a food manufacturer or distributor.

312. Aurum Trading and Defendant You knew that the transaction or conduct of keeping 8% to 12% of the wired monies in and of itself was an illegal activity and that said transaction was designed in whole or in part to conceal or disguise the nature, the source, and the ownership of the proceeds of unlawful activity or that Aurum Trading and Defendant You kept 8% to 12% of the wired monies with the intent to promote the carrying on of converting wired monies into cash for their own financial benefits.

313. In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the cash they received from Aurum Trading and Defendant You represented the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received from various insurance companies into cash for the purpose of financially benefitting themselves and other Defendants involved in the transaction and distributing said cash to Sunrise's elderly clients and other seniors in the form of cash "rebates," "kickbacks," or "allowances."

314. In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the transaction was designed in whole or in part to conceal the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received under the Federal Medicaid and Medicare programs into cash for their own financial benefits.

315.    In conducting fraudulent financial transactions described herein, Defendants knew that giving and receiving "rebates," "kickbacks," or "referral fees" was in and of itself an illegal activity.

316.    In conducting fraudulent financial transactions described herein, Defendants knew the existence of the contracts between Plaintiff and Defendants Song and Oh under which Defendants Song and Oh were required to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

317.    In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired to Aurum Trading were used for the purpose of money laundering and to financially benefit Defendants instead of paying Plaintiff.

318.    In conducting fraudulent financial transactions described herein, Defendants knew that portions, if not all, of the funds wired, distributed, and shared among Defendants belonged to Plaintiff under the contracts between Plaintiff and Defendants Song and Oh.

319.    In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate 18 U.S.C. § 666 and defraud Plaintiff.

320.    In conducting fraudulent financial transactions described herein, Defendants made wire and cash transactions involving the proceeds of the scheme to siphon money that Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits, a scheme that was furthered by the use of the wire communications, with the knowledge that the transactions represented the proceeds of that scheme and with the further knowledge that these transactions, which involved $371,661.46, were intended to disguise both the source and destination of the stolen money.

321.    **Predicate Act: Transport and Receipt of Stolen Money in Violation of 18 U.S.C. §§ 2314 and 2315**.  18 U.S.C. § 2314 provides that "[w]hoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud" or "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more" "[s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 2314.

322.    18 U.S.C. § 2315 provides that "[w]hoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken" "[s]hall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 2315.

323.    Defendant You committed acts constituting indictable offenses under 18 U.S.C. § 2314 in that he transported, and still transports, stolen or converted money of the value of $5,000 or more, as described herein, from Florida to New York on a monthly basis for the purpose of tendering cash to Kangsan Consulting and Defendant Lee with the knowledge that the transported cash was stolen, converted, or taken by fraud.

324.     The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice described herein.

325.     The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because Defendant You knew that the wired money was the insurance reimbursement payments Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and/or Medicare programs.

326.     The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because Defendant You was, and is, the one that converted the wired funds into cash for the purpose of money laundering and cash distributions and payouts.

327.     Kangsan Consulting, Defendant Lee, and Defendant Oh committed acts constituting indictable offenses under 18 U.S.C. § 2315 in that they received and kept, and still receive and keep, the cash in excess of $5,000.00, which crossed a State – from Florida to New York – after being stolen, unlawfully converted, or taken.

328.     The cash Kangsan Consulting and Defendant Lee received from Defendant You was used to financially enrich Defendants Lee and Oh, who are fiancés.

329.     The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice described herein.

330.    The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because they knew that the money wired by Sunrise, Defendant Song, and Defendant Oh to Aurum Trading and Defendant You was the insurance reimbursement payments Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and/or Medicare programs for the purpose of money laundering and cash distributions and payouts.

331.    The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because they knew that the wired money was converted into cash by Aurum Trading and Defendant You for the purpose of money laundering and cash distributions and payouts.

332.    The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because they knew that Defendant You transported the cash from Florida to New York by traveling interstate for the purpose of money laundering and cash distributions and payouts.

333.    **Predicate Act: Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises in Violation of 18 U.S.C. § 1952.** 18 U.S.C. § 1952 provides that "[w]hoever travels interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to… distribute the proceeds of any unlawful activity… or otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952.

334.    As used in this section, "unlawful activity" includes any act which is indictable under section 1956 (Laundering of Monetary Instruments) and 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) of Title 18. *Id.*

335.    Defendant You committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that he travelled, and still travels, interstate – to and from Florida and New York – with intent to distribute the proceeds of unlawful activities derived from money laundering, as described herein, to Kangsan Consulting and Defendant Lee and did in fact promote, manage, carry on, facilitate the promotion, management, or carrying on of the unlawful activity of money laundering.

336.    The cash Defendant You travelled, and still travels, with are the proceeds of unlawful activities derived from money laundering, as described herein, and they were in fact distributed, and are still being distributed, to Kangsan Consulting, Defendant Lee, Defendant Oh, Sunrise's elderly clients, and other seniors as part of Defendants' scheme or artifice in furtherance of achieving the goals of their RICO enterprises.

337.    **Continuity of Conduct**. Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiff, constituted a continuous course of conduct spanning a period from March 2022 until present, which was intended to financially benefit themselves and damage Plaintiff through false representations, fraud, deceit, and other improper and unlawful means, including falsifying business records, receipts, and invoices, and money laundering.  Therefore, said violations were a part of a pattern of racketeering activities under 18 U.S.C. §§ 1961(1) and (5).

338.    Defendants have conducted and/or participated, directly or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities as defined herein in violation of 18 U.S.C. § 1962(c).

339.    Defendant You, as Aurum Trading's principal, shareholder, director, member, general manager, officer, or managing member, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring with

Sunrise, Kangsan Consulting, L & K, Defendant Song, Defendant Oh, Defendant Lee, and Defendant Kang to create fake invoices as if those invoices were for Sunrise's purchase of food products from Aurum Trading, keeping 8% to 12% of the funds he received from Sunrise and Defendants Song and Oh as "kickbacks" or "rebates," disseminating said fake invoices interstate to Sunrise by the use of wire communication, transporting stolen money interstate, traveling interstate with intent to distribute the proceeds of unlawful activities of money laundering, and distributing those proceeds to Kangsan Consulting, Defendant Lee, and Defendant Oh.

340. Defendant Lee, as Kangsan Consulting and L & K's principal, shareholder, director, member, general manager, officer, or managing member, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring to execute the schemes described herein, creating at least forty-nine (49) fake invoices under the name of Aurum Trading, disseminating those fake invoices interstate by the use of wire communication, keeping certain portions of the cash he received from Aurum Trading and Defendant You for his own financial benefits, receiving the proceeds of unlawful activities of money laundering, keeping and using those proceeds to financially enrich himself, distributing cash payouts to Sunrise' elderly clients and other seniors as "kickbacks," "rebates," or "allowances," inducing Sunrise's elderly clients and other seniors to enroll in Sunrise's daycare program or to remain as Sunrise's clients, inducing Sunrise's elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting Sunrise's elderly clients to get home care services from various home care service companies that he is affiliated with, and giving and receiving "kickbacks," "rebates," and "referral fees" from various sources, including, but not limited to, Sunrise, Defendants Song and Oh, Aurum Trading, Defendant You, and various pharmacies and home care service companies.

341.     Defendant Kang, as L & K's principal, shareholder, director, member, general manager, officer, or managing member, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of creating at least forty-nine (49) fake invoices under the name of Aurum Trading and disseminating those fake invoices interstate by the use of wire communication to Defendant You.

342.     Defendants Song and Oh, as Sunrise's principals, shareholders, directors, members, general managers, officers, or managing members, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring with Sunrise, Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang to execute the schemes described herein, receiving the fake invoices knowing that they were fake via interstate wire communication, causing those fake invoices to be transmitted to Plaintiff, using those fake invoices to defraud Plaintiff, depriving Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs to Aurum Trading and Defendant You as if those funds were wired for the purpose of purchasing food products from Aurum Trading, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts, and conspiring to distribute cash payouts to Sunrise's elderly clients and other seniors in the form of "kickbacks" "rebates," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients.

343.     Additionally, Defendant Oh, as Sunrise's principal, shareholder, director, member, general manager, officer, or managing member, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of receiving the

proceeds of unlawful activities of money laundering with the knowledge that those proceeds were the products of money laundering and that they were stolen, unlawfully converted, or taken by fraud.

344.    As such, there is a threat of continuing criminal activity extending indefinitely into the future.  Although each Defendant is engaged, or purportedly engaged, in a business that is not criminal in nature on its face – Sunrise as a senior daycare provider, Aurum Trading as a food manufacturer or distributor, Kangsan Consulting as a consulting firm, and L & K as an accounting firm – the predicates described herein are a regular way of conducting Defendants' businesses or that the nature of the predicate acts themselves implies a threat of continuing activity.

345.    The means employed by Defendants with respect to Plaintiff and other potential victims is the same, and that Defendants were, and continue to be, engaged in a scheme defrauding other potential victims.

346.    Because Defendants have been continuously operating the alleged enterprise(s) to date, there is a threat of continuing criminal activity extending indefinitely into the future creating more victims similar to Plaintiff.

347.    The pattern of Defendants' racketeering activities described herein proximately caused Plaintiff's injury, as those RICO patterns or acts are a substantial factor in the sequence of responsible causation.

348.    That is, Defendants had, and still have, a set system that they have created in that each act by the responsible party caused the next responsible party or parties to engage in their respective role(s) in sequence as part of their common scheme or artifice.

349.    Had Defendants not engaged in the pattern of racketeering activities described herein, Plaintiff would not have been injured in his business or property.

350.    But for Defendants' deceptive and fraudulent conduct and behavior described herein, Plaintiff would not have been injured in his business or property.

351.    But for Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff would not have been injured in his business or property.

352.    The injury to Plaintiff was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

353.    As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices, Plaintiff has suffered, and continues to suffer, financial damages.

354.    Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

355.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injuries to Plaintiff in his business or property by reason of Defendants' violation of 18 U.S.C. § 1962(c).   Plaintiff seeks an award of damages in compensation for, among other things, millions of dollars, in aggregate, for his financial damages.

356.    Plaintiff accordingly seeks an award of three (3) times the damages he sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

**SECOND CAUSE OF ACTION**
**(Conspiracy to Violation Federal Civil RICO, 18 U.S.C. § 1962[d])**

357.    Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

358.    In violation of 18 U.S.C. § 1962(d), Defendants, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activities as alleged above.

359. The conspiracy commenced at least as early as March 2022.

360. The conspiracy's purpose was to convert the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits.

361. As part of their conspiracy to convert said insurance reimbursement payments for their own financial benefits, Defendants deprived Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, which primarily consisted of insurance reimbursement payments, to which Plaintiff was, and still is, entitled while Defendants used the monies that belonged to Plaintiff to financially benefit themselves.

362. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included, but are not limited to, wiring funds received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts, creating fake invoices to disguise the fraudulent, money laundering transactions as legitimate transactions, using those fake invoices to defraud Plaintiff, converting those funds into cash, keeping portions of the funds for their own financial benefits, transporting the proceeds of unlawful activities of money laundering interstate, travelling interstate with intent to distribute the proceeds, distributing the proceeds, receiving and keeping the proceeds to financially enrich themselves, giving away cash payouts to Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients, inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting those elderly clients to obtain home care services, knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain

elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, sharing the funds converted into cash among Defendants, and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

363.    Even if some of Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall objects of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

364.    Defendants' conspiracy to commit substantive RICO violations described herein proximately caused Plaintiff's injury, as those RICO patterns or acts are a substantial factor in the sequence of responsible causation.

365.    That is, Defendants had a set system that they have created in that each act by the responsible party caused the next responsible party or parties to engage in their respective role(s) in sequence as part of their common scheme or artifice.

366.    Had Defendant not conspired to commit substantive RICO violations described herein, Plaintiff would not have been injured in his business or property.

367.    But for Defendants' deceptive and fraudulent conduct of conspiring to commit substantive RICO violations described herein, Plaintiff would not have been injured in his business or property.

368.    Defendants' conspiracy to commit substantive RICO violations in violation of 18 U.S.C. § 1962(d) led directly to Plaintiff's injury.

369.    The injury to Plaintiff was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

370.    As a direct and proximate result of Defendants' fraudulent, deceptive activities and business practices and conspiracy to commit substantive RICO violations, Plaintiff has suffered, and continues to suffer, financial damages.

371.    Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise and conspiracy to commit substantive RICO violations, as alleged herein.

372.    The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injuries to Plaintiff in his business or property. Plaintiff seeks an award of damages in compensation for, among other things, millions of dollars, in aggregate, for his financial damages.

373.    Plaintiff has been injured in his business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d). The unlawful actions of Defendants, and each of them, directly, illegally, and proximately caused, and continue to cause injury, to Plaintiff in his business and property.

374.    Plaintiff seeks an award of damages in compensation for, among other things, millions of dollars, for his financial losses. Plaintiff further seeks an award of three (3) times the damages he sustained, as well as punitive damages, and the recovery of reasonable attorneys' fees and costs, expenses, and disbursements incurred, and any other relief as authorized by statute.

**THIRD CAUSE OF ACTION**

**(Tortious Interference with Contracts against Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang)**

375.     Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

376.     Valid, enforceable written contracts between Plaintiff and Defendants Song and Oh existed.

377.     Pursuant to the terms and conditions of the contracts, Defendants Song and Oh were required to pay all Accounts Receivable of Sunrise incurred on or before February 8, 2022, to Plaintiff in the approximate amount of $480,000.00.

378.     Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang knew about the existence, and the terms and conditions, of the contracts under which Defendants Song and Oh were required to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

379.     Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang intentionally procured Defendants Song and Oh's breach of the contracts without justification by creating and disseminating forty-nine (49) fake invoices, disguised as invoices Aurum Trading issued for Sunrise's purchase of food products from Aurum Trading, when in fact no such transactions occurred.

380.     Upon information and belief, those fake invoices were willfully and fraudulently created by L & K and Defendants Lee and Kang at the office space where both Kangsan Consulting and L & K are located for the purpose of procuring Defendants Song and Oh's breach of the contracts.

381. Upon information and belief, those fake invoices were transmitted to Defendant You, who was located in Florida, via wire communication, to wit: via email.

382. Upon information and belief, Defendant You then disseminated said fake invoices to Sunrise and Defendants Song and Oh for the purpose of procuring Defendants Song and Oh's breach of the contracts.

383. Defendants Song and Oh, upon receipt of those fake invoices, did in fact breach the contracts and refused to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

384. As a result of Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang's intentional procurement of the breach, Plaintiff was damaged in an amount to be determined at trial, but not less than $480,000.00, plus costs, expenses, disbursements, and reasonable attorneys' fees.

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

A.    **On the First Cause of Action**, a judgment against Defendant in an amount to be determined at trial, but not less than $3,000,000.00, declaratory relief, compensatory, treble, and punitive damages, and other appropriate legal and equitable relief, in addition to the costs, expenses, disbursements, and attorneys' fees incurred in bringing the instant lawsuit, and any other relief that the Court deems just and proper;

B.    **On the Second Cause of Action**, a judgment against Defendant in an amount to be determined at trial, but not less than $3,000,000.00, declaratory relief, compensatory, treble, and punitive damages, and other appropriate legal and equitable relief, in addition to the costs, expenses, disbursements, and attorneys' fees incurred in bringing the instant lawsuit, and any other relief that the Court deems just and proper; and

**C.** **On the Third Cause of Action**, a judgment against Defendant in an amount to be determined at trial, but not less than $3,000,000.00, declaratory relief, compensatory damages, and other appropriate legal and equitable relief, in addition to the costs, expenses, disbursements, and attorneys' fees incurred in bringing the instant lawsuit, and any other relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: August 5, 2024
New York, New York

**AHNE & JI, LLP**

/s/ Younghoon Ji
By: Younghoon Ji, Esq.
*Attorneys for Plaintiff*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel.: (212) 594-1035
Email: yji@ahnejillp.com