**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

SEOK JAE YANG,                                    Case No.: 1:24-cv-05459-LDH-TAM

                         Plaintiff,

           -against-                              <u>RICO STATEMENT</u>

SUNRISE SENIOR SERVICE LLC d/b/a
HANMAUM DAYCARE, TAEYOUNG
SONG, JIEUN OH, AURUM TRADING INC.,
JI HOON YOU, KANGSAN CONSULTING LLC,
KANGSAN LEE, L & K OFFICE INC.,
JIN YOUNG KANG a/k/a JINYOUNG KANG a/k/a
JIN Y. KANG, and DOES 1 through 50, inclusive,

                         Defendants.
-------------------------------------------------------------x

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

   Plaintiff states that the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(c) and (d).

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

   **Sunrise Senior Service LLC d/b/a Hanmaum Daycare ("Sunrise"):**

   Defendants Song and Oh used Sunrise's bank account to wire the funds Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs to Aurum Trading's various bank accounts at TD Bank, Bank of America, Wells Fargo, Chase, and Citibank in the total amount of $371,661.46 for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

   **Taeyoung Song ("Defendant Song"):**

   Defendant Song conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of conspiring with Sunrise, Defendant Oh, Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang to execute the schemes described herein, receiving the fake invoices knowing that they were fake via interstate wire communication, causing those fake invoices to be transmitted to Plaintiff, using those fake invoices to defraud Plaintiff, depriving

1

Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, wiring the funds Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs to Aurum Trading and Defendant You as if those funds were wired for the purpose of purchasing food products from Aurum Trading, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts, and conspiring to distribute cash payouts to Sunrise's elderly clients and other seniors in the form of "kickbacks" "rebates," or "allowances" for the purpose of inducing them to remain as Sunrise's clients or to enroll in Sunrise's senior care program.

**Jieun Oh ("Defendant Oh"):**

Defendant Oh conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of conspiring with Sunrise, Defendant Song, Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang to execute the schemes described herein, receiving the fake invoices knowing that they were fake via interstate wire communication, causing those fake invoices to be transmitted to Plaintiff, using those fake invoices to defraud Plaintiff, depriving Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, wiring the funds Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs to Aurum Trading and Defendant You as if those funds were wired for the purpose of purchasing food products from Aurum Trading, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts, and conspiring to distribute cash payouts to Sunrise's elderly clients and other seniors in the form of "kickbacks" "rebates," or "allowances" for the purpose of inducing them to remain as Sunrise's clients or to enroll in Sunrise's senior care program.

Additionally, Defendant Oh conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of receiving the proceeds of unlawful activities of money laundering with the knowledge that those proceeds were the products of money laundering and that they were stolen, unlawfully converted, or taken.

**Aurum Trading Inc. ("Aurum Trading"):**

Defendant You used Aurum Trading's bank accounts at TD Bank, Bank of America, Wells Fargo, Chase, and Citibank to receive the funds Sunrise and Defendants Song and Oh wired in the amount of $371,661.46 for the purpose of defrauding Plaintiff, money laundering, financially enriching Defendants.

**Ji Hoon You ("Defendant You"):**

Defendant You conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of conspiring with Sunrise, Kangsan

Consulting, L & K, Defendant Song, Defendant Oh, Defendant Lee, and Defendant Kang to create fake invoices as if those invoices were for Sunrise's purchase of food products from Aurum Trading, keeping 8% to 12% of the funds he received from Sunrise and Defendants Song and Oh as "kickbacks" or "rebates," disseminating said fake invoices interstate to Sunrise and Defendants Song and Oh by the use of wire communication, transporting stolen money interstate, traveling interstate with intent to distribute the proceeds of unlawful activities of money laundering, and distributing those proceeds to Kangsan Consulting, Defendant Lee, and Defendant Oh for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

**Kangsan Consulting LLC ("Kangsan Consulting"):**

Defendant Lee used Kangsan Consulting's office, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, as the place where he received the cash Defendant You transported interstate for distributions and cash payouts. Defendant Lee used Kangsan Consulting's office as the place where the cash distributions and payouts to Sunrise's elderly clients and other seniors occurred, and still occur, for the purpose of inducing them to either remain as Sunrise's clients or to enroll in Sunrise's senior care services.

**Kangsan Lee ("Defendant Lee"):**

Defendant Lee conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of conspiring to execute the schemes described herein, creating at least forty-nine (49) fake invoices under the name of Aurum Trading, disseminating those fake invoices interstate by the use of wire communication, keeping certain portions of the cash he received from Aurum Trading and Defendant You for his own financial benefits, receiving the proceeds of unlawful activities of money laundering with the knowledge that those proceeds were the products of money laundering and that they were stolen, unlawfully converted, or taken, keeping and using those proceeds to financially enrich himself, distributing cash payouts to Sunrise' elderly clients and other seniors as "kickbacks," "rebates," or "allowances," inducing them to remain as Sunrise's clients or to enroll in Sunrise's senior care program, inducing Sunrise's elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting Sunrise's elderly clients to get home care services from various home care service companies that he is affiliated with, and giving and receiving or otherwise sharing "kickbacks," "rebates," and "referral fees" from, and with, various sources, including, but not limited to, Sunrise, Defendants Song and Oh, Aurum Trading, Defendant You, and various pharmacies and home care service companies.

**L & K Office Inc. ("L & K"):**

Defendant Lee used L & K's office, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, as the place where he received the cash Defendant You transported interstate for distributions and cash payouts. Defendant Lee used L & K's office as the place where the cash distributions and payouts to Sunrise's elderly clients and other seniors occurred,

and still occur, for the purpose of inducing them to either remain as Sunrise's clients or to enroll in Sunrise's senior care services.

Defendants Lee and Kang used L & K's office, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, as the place where they created forty-nine (49) fake invoices under the name of Aurum Trading, using one of L & K's computers, and disseminated said forty-nine (49) fake invoices to Defendant You, who was located in Florida, via interstate wire.

**Jin Young Kang a/k/a Jinyoung Kang a/k/a Jin Y. Kang ("Defendant Kang"):**

Defendant Kang conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of creating at least forty-nine (49) fake invoices under the name of Aurum Trading and disseminating those fake invoices interstate by the use of wire communication to Defendant You.

Defendants – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – joined together as a group to: (a) launder the insurance reimbursements payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs to financially enrich themselves; (b) create fake invoices to disguise those fraudulent, money laundering transactions as legitimate transactions; (c) distribute cash payouts to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program to financially enrich Sunrise, Defendant Song, and Defendant Oh; (d) make false or fraudulent claims to various insurance companies by claiming that elderly clients were present at Sunrise's senior care facilities, when they were not, to financially enrich Sunrise, Defendant Song, and Defendant Oh; (e) give, receive, or otherwise share "rebates," "kickbacks," or "referral fees" among themselves to financially enrich themselves; (f) transport stolen money by traveling interstate from Florida to New York; (g) receive "rebates," kickbacks," or "referral fees" from various pharmacies and home care service companies affiliated with them; (h) defraud Plaintiff; and (i) conspire in a coordinated scheme to defraud the Medicaid and Medicare programs.

3. **List the alleged wrongdoers, other than the defendants, and state the misconduct of each wrongdoer.**

Although other wrongdoers, other than Defendants, are unknown to Plaintiff at this juncture, Plaintiff states, upon information and belief, that: (a) one or more officers and/or directors of Sunrise; (b) one or more former officers and/or directors of Sunrise; (c) one or more employees of Sunrise; (d) one or more officers and/or directors of Aurum Trading; (e) one or more former officers and/or directors of Aurum Trading; (f) one or more employees of Aurum Trading; (g) one or more officers and/or directors of Kangsan Consulting; (h) one or more former officers and/or directors of Kangsan Consulting; (i) one or more employees of Kangsan Consulting; (j) one or more officers and/or directors of L & K; (k) one or more former officers and/or directors of L & K; (l) one or more employees of L & K; and/or (m) Amazing Care Pharmacy Inc. and its principal – Min Shi.

Upon information and belief, the alleged wrongdoers listed above aided and abetted Defendants committing the wrongful acts described in the Complaint, including the alleged predicate acts.

**4. List the alleged victims and state how each victim was allegedly injured.**

**Plaintiff Seok Jae Yang is the only known victim at this juncture:**

In order to defraud Plaintiff and disguise the fraudulent, money laundering transactions as legitimate transactions, Defendants conspired to create fake invoices. Those fake invoices were created by L & K and its principals – Defendant Lee and Defendant Kang.

Said forty-nine (49) fake invoices contained, and still contain, multiple false pretenses – names or types of products Sunrise purportedly purchased from Aurum Trading and the purported amounts Sunrise purportedly paid to Aurum Trading – as if those invoices were for Sunrise's purchase of food products from Aurum Trading.

Said forty-nine (49) fake invoices were, and still are, fraudulent because Aurum Trading is not a food manufacturer or distributor, but Defendants used Aurum Trading as a vehicle to defraud Plaintiff and launder the monies that belonged to Plaintiff for Defendants' own financial benefits. Said forty-nine (49) fake invoices were, and still are, fraudulent because Sunrise purchases food products from the supermarket, named "H Mart," for its business operation using its corporate credit card(s). Plaintiff knows this because he was the sole member and owner of Sunrise prior to the transfer of his entire ownership interest in Sunrise to Defendants Song and Oh on February 18, 2022.

From December 1, 2021 to February 1, 2022, the period during which Plaintiff was still the sole member and owner of Sunrise, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46. These fake invoices were, and still are, fraudulent because those invoices were purportedly issued during the period when Plaintiff was still the sole member and owner of Sunrise, and at no point did Sunrise or Plaintiff ever place any purchase orders for food products with Aurum Trading. From the inception of Sunrise's existence until the date of Closing, which was February 18, 2022, Sunrise and Plaintiff purchased food products from the supermarket, named "H Mart," located at 156-40 Northern Blvd., Flushing, NY 11354, using Sunrise's then corporate credit card(s).

Defendants wove a complicated web of fraudulent financial schemes to siphon money for their own financial benefits.

Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – acting in concert with each other in the manner described herein, agreed to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits.

Defendants' shared, common objective was to financially enriching themselves by engaging in the described pattern of racketeering activities, and in doing so, Defendants intentionally and fraudulently targeted Plaintiff, decided to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022 to which Plaintiff was, and still is, entitled, and launder the monies that belonged to Plaintiff for their own financial benefits by claiming that Plaintiff concealed the existence of Sunrise's Accounts Payable in the amount of $371,661.46, the total amount of the fake invoices created by L & K and its principals under the name of Aurum Trading.

Defendants Song and Oh claimed that they made payments for those invoices during the period March 2022 through May 2022.

Defendants' shared, common objective was to financially enriching themselves by engaging in the described pattern of racketeering activities, and in doing so, Defendants intentionally and fraudulently targeted Plaintiff and did in fact deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022 to which Plaintiff was, and still is, entitled so that Defendants could use those monies to financially enrich themselves.

By creating, forging, counterfeiting, and disseminating fake invoices, created by L & K and its principals, as if those invoices were issued by Aurum Trading for legitimate purposes, Defendants not only enabled themselves to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022, but also enabled themselves to launder the monies that belonged to Plaintiff for their own financial benefits.

5. **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:**

   (a) **List the alleged predicate acts and the specific statutes that were allegedly violated.**

   i.    Fraud by Wire, Radio, or Television in Violation of 18 U.S.C. § 1343.

   ii.   Laundering of Monetary Instruments in Violation of 18 U.S.C. § 1956.

   iii.  Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in Violation of 18 U.S.C. § 1957.

   iv.   Transport and Receipt of Stolen Money in Violation of 18 U.S.C. §§ 2314 and 2315.

   v.    Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises in Violation of 18 U.S.C. § 1952.

**(b) Provide the dates of, the participants in, and a description of the facts surrounding the predicate acts.**

**(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P 9(b). Identify the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made:**

Plaintiff states the followings in response to both subparagraphs (b) and (c) above:

Defendants – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – joined together as a group to: (a) launder insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs to financially enrich themselves; (b) create fake invoices to disguise those fraudulent, money laundering transactions as legitimate transactions; (c) distribute cash payouts to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program to financially enrich Sunrise, Defendant Song, and Defendant Oh; (d) make false or fraudulent claims to various insurance companies by claiming that elderly clients were present at Sunrise's senior care facilities when they were not to financially enrich Sunrise, Defendant Song, and Defendant Oh; (e) give, receive, or otherwise share "rebates," "kickbacks," or "referral fees" among themselves to financially enrich themselves; (f) transport stolen money by traveling interstate from Florida to New York; (g) receive "rebates," kickbacks," or "referral fees" from various pharmacies and home care service companies affiliated with them; (h) defraud Plaintiff; and (i) conspire in a coordinated scheme to defraud the Medicaid and Medicare programs.

Defendants engaged in a pattern of racketeering activities and fraudulent schemes to divert a substantial amount of money in government funds, such as collusive money laundering arrangements, including laundering money by converting the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and/or Medicare programs into cash and sharing the cash among themselves for their own financial benefits, distributing and giving away cash payouts to Sunrise's elderly clients and other seniors, giving and receiving "rebates," "kickbacks," and/or "referral fees," transporting stolen money and traveling interstate in furtherance of their scheme or artifice, keeping those cash for their own financial benefits, falsifying business records, receipts, and invoices, and paying themselves a substantial amount of money for work that was not performed or otherwise they are not entitled to.

Defendants conspired among themselves to create fake invoices in order to defraud Plaintiff and disguise the fraudulent, money laundering transactions as legitimate transactions, as if Sunrise's issuances of various checks or wires to Aurum Trading were

legitimate transactions, and in doing so, Defendants intentionally and fraudulently targeted Plaintiff, agreed to defraud Plaintiff, and launder the monies that belonged to Plaintiff for their own financial benefits. Defendants did in fact use those fake invoices to deprive Plaintiff of the Accounts Receivable of Sunrise incurred on or before February 8, 2022.

L & K and its principals – Defendants Lee and Kang – who provide tax and accounting services to Sunrise, Aurum Trading, and Defendant You, as IRS Enrolled Agents, did create fake invoices, retroactively, under the name of Aurum Trading and disseminated said fake invoices to Sunrise and ultimately to Plaintiff.

Said fake invoices were used as a vehicle for Defendants not only to defraud Plaintiff, but also to launder the monies that belonged to Plaintiff by converting the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and/or Medicare programs into cash and use the cash to pay Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances."

Those fake invoices were willfully and fraudulently created by Defendants to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial enrichment.

On or about December 1, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00007; Purchase Order # 23748 – in the amount of $7,107.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 1, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:27 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 2, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00013; Purchase Order # 23758 – in the amount of $8,512.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 2, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:34 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 3, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00024; Purchase Order # 23760 – in the amount of $6,930.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 3, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:23:44 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 6, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00029; Purchase Order #23768 – in the amount of $16,090.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 6, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:16 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 6, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00028; Purchase Order # 23767 – in the amount of $5,367.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 6, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:12 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 7, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00032; Purchase Order # 23770 – in the amount of $5,264.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 7, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:21 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 8, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00036; Purchaser Order # 23773 – in the amount of $8,824.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 8, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around January 9, 2023, at or around 5:23:37 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 9, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00040; Purchase Order # 23777 – in the amount of $8,602.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 9, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:24:45 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 10, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00043; Purchase Order # 23780 – in the amount of $9,496.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 10, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:24:53 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 13, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00048; Purchase Order # 23784 – in the amount of $7,350.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 13, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:25:01 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 14, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00050; Purchase Order # 23787 – in the amount of $7,373.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 14, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:26:28 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 15, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00053; Purchase Order # 23790 – in the amount of $5,612.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 15, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:26:37 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 15, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00054; Purchase Order # 23792 – in the amount of $8,315.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 15, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:27:30 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 16, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00057; Purchase Order # 23794 – in the amount of $7,066.50 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 16, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:27:37 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 16, 2021, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00058; Purchase Order # 23796 – in the amount of $4,736.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 16, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:11 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 17, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00061; Purchase Order # 23800 – in the amount of $5,501.90 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 17, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:19 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 20, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00066; Purchase order # 23804 – in the amount of $6,171.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 20, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:29 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 21, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00069; Purchase Order # 23808 – in the amount of $6,089.50 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 21, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:28:37 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 22, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00073; Purchase Order # 23811 – in the amount of $8,695.50 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 22, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:46 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 23, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00077; Purchase Order # 23817 – in the amount of $6,406.10 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulent created the December 23, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:28:54 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 24, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00079; Purchase Order # 23820 – in the amount of $8,493.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 24, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:01 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 27, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00080; Purchase Order # 23822 – in the amount of $5,441.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 27, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:10 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 28, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00083; Purchase Order # 23825 – in the amount of $8,143.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 28, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:29:18 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 29, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00085; Purchase Order # 23828 – in the amount of $8,641.40 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 29, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:27 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 30, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00088; Purchase Order # 23829 – in the amount of $5,332.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 30, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:36 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about December 31, 2021, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00091; Purchase Order # 23834 – in the amount of $6,848.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the December 31, 2021 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:43 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 3, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00004; Purchase Order #23839 – in the amount of $6,475.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 3, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:29:53 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 4, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00007; Purchase Order # 23841 – in the amount of $5,054.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 4, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on

January 9, 2023, at or around 5:30:01 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 5, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00009; Purchase Order # 23844 – in the amount of $6,230.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 5, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:08 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 6, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00012; Purchase Order # 23848 – in the amount of $7,166.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 6, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:17 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 7, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00015; Purchase Order # 23854 – in the amount of $9,862.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 7, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:22:56 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 7, 2022, Aurum Trading purportedly issued another fake invoice – Invoice # INV-00016; Purchase Order # 23855 – in the amount of $16,090.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 7, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:34 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 10, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00017; Purchase Order # 23857 – in the amount of $6,737.50 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 10, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:30:42 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 11, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00020; Purchase Order # 23859 – in the amount of $8,205.20 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 11, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:52 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 12, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00023; Purchase Order # 23862 – in the amount of $6,973.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 12, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:30:59 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 13, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00026; Purchase Order # 23865 – in the amount of $7,829.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 13, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:07 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 14, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00029; Purchase Order # 23866 – in the amount of $7,710.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 14, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:15 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 17, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00033; Purchase Order # 23868 – in the amount of $6,245.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 17, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:31:23 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 18, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00036; Purchase Order # 23872 – in the amount of $6,322.50 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 18, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:31 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 19, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00039; Purchase Order # 23874 – in the amount of $7,767.30 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 19, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:39 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 20, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00042; Purchase Order # 23877 – in the amount of $6,823.30 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 20, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:46 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 21, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00046; Purchase Order # 23882 – in the amount of $9,222.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 21, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:31:55 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 24, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00048; Purchase Order # 23885 – in the amount of $7,443.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 24, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:32:09 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 25, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00051; Purchase Order # 23888 – in the amount of $7,941.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 25, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:17 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 26, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00053; Purchase Order # 23893 – in the amount of $8,098.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 26, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:26 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 27, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00056; Purchase Order # 23896 – in the amount of $5,224.70 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 27, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:34 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 28, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00059; Purchase Order # 23901 – in the amount of $5,623.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 28, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:32:41 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about January 31, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00063; Purchase Order # 23904 – in the amount of $6,338.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the January 31, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355,

on January 9, 2023, at or around 5:32:49 p.m., for the purpose of money laundering and financially enriching Defendants.

On or about February 1, 2022, Aurum Trading purportedly issued a fake invoice – Invoice # INV-00004; Purchase Order # 23907 – in the amount of $13,875.00 to Sunrise.

Upon information and belief, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created the February 1, 2022 invoice, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, at or around 5:23:07 p.m., for the purpose of money laundering and financially enriching Defendants.

From December 1, 2021 to February 1, 2022, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46.

Said forty-nine (49) fake invoices contained, and still contain, multiple false pretenses – names or types of products Sunrise purportedly purchased from Aurum Trading – as if those invoices were for Sunrise's purchase of food products from Aurum Trading.

Said forty-nine (49) fake invoices were, and still are, fraudulent because Aurum Trading is not a food manufacturer or distributor, but Defendants used Aurum Trading as a vehicle to defraud Plaintiff and launder the monies that belonged to Plaintiff for Defendants' own financial benefits. Said forty-nine (49) fake invoices were, and still are, fraudulent because Sunrise purchases food products from the supermarket, named "H Mart," for its business operation using its corporate credit card(s). Plaintiff knows this because he was the sole member and owner of Sunrise prior to the transfer of his entire ownership interest in Sunrise to Defendants Song and Oh on February 18, 2022.

From December 1, 2021 to February 1, 2022, the period during which Plaintiff was still the sole member and owner of Sunrise, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46. These fake invoices were, and still are, fraudulent because those invoices were purportedly issued during the period when Plaintiff was still the sole member and owner of Sunrise, and at no point did Sunrise or Plaintiff ever place any purchase orders for food products with Aurum Trading. From the inception of Sunrise's existence until the date of Closing, which was February 18, 2022, Sunrise and Plaintiff purchased food products from the supermarket, named "H Mart," located at 156-40 Northern Blvd., Flushing, NY 11354, using Sunrise's then corporate credit card(s).

<u>Fraud by Wire, Radio, or Television in Violation of 18 U.S.C. § 1343</u>:

Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 on multiple occasions in that they devised or intended to devise a scheme or artifice to convert the insurance reimbursement payments Sunrise received from various insurance companies into cash for their own financial benefits and cash distributions and payouts.

Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1343 on multiple occasions in that they devised or intended to devise a scheme or artifice to defraud Plaintiff by means of false and fraudulent pretenses, representations, or promises for obtaining Plaintiff's money or property.

In furtherance of their master plan to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits, Defendants not only created fake invoices, which contained multiple false pretenses, but also caused delivery of those fake invoices, as if those invoices originated from Aurum Trading for legitimate transaction purposes, by the use of wires, to wit: emails and text messages.

In furtherance of their master plan to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits, Defendants created forty-nine (49) fake invoices in order to disguise the fraudulent, money laundering transactions as legitimate transactions and transmitted, or caused them to be transmitted, to Florida, New York, and Pennsylvania by the use of wire communications.

In furtherance of their master plan to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits, Defendants caused delivery of the fake invoices, purportedly issued by Aurum Trading for Sunrise' purported purchase of food products from Aurum Trading, as if those invoices were legitimate documents, by the use of interstate wires or received such therefrom.

The purported December 6, 2021 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

The purported January 7, 2022 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

The purported February 1, 2022 invoice was purportedly issued by Aurum Trading; however, on the bottom center of said invoice, another company's name is listed, and it provides that "HK Rongyue International Trade Limited… Thank you for your business!"

These further demonstrate that the invoices were intentionally and fraudulently created and that L & K and its principals – Defendant Lee and Kang – were not thorough enough in creating fake invoices under the name of Aurum Trading.

In furtherance of their master plan to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits, Defendants transmitted, or caused to be transmitted, by means of wire communications in interstate commerce said forty-nine (49) fake invoices purported to be legitimate documents. The acts of Defendants set forth above were done with the knowledge that the use of the wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice described herein.

Defendants' use of the wire communications was in furtherance of their master plan to defraud Plaintiff and divert the monies that belonged to Plaintiff for their own financial benefits.

Said forty-nine (49) fake invoices were, and still are, fraudulent because Aurum Trading is not a food manufacturer or distributor, but Defendants used Aurum Trading as a vehicle to launder money and defraud Plaintiff. Said forty-nine (49) fake invoices were, and still are, fraudulent because Sunrise routinely purchases food products from the supermarket, named "H Mart," using its corporate credit card(s). Plaintiff knows this because he was the sole member and owner of Sunrise prior to the transfer of his entire ownership interest in Sunrise to Defendants Song and Oh on February 18, 2022.

From December 1, 2021 to February 1, 2022, Aurum Trading purportedly issued forty-nine (49) fake invoices to Sunrise, and the total amount of the invoices Aurum Trading purportedly issued from December 1, 2021 to February 1, 2022 to Sunrise is $371,661.46. These fake invoices were, and still are, fraudulent because those invoices were purportedly issued during the period when Plaintiff was still the sole member and owner of Sunrise, and at no point did Sunrise or Plaintiff ever place any purchase orders for food products with Aurum Trading and that Sunrise and Plaintiff purchased food products from the supermarket, named "H Mart," located at 156-40 Northern Blvd., Flushing, NY 11354, using Sunrise's then corporate credit card(s).

In furtherance of their master plan alleged herein, Defendants communicated among themselves by the use of the interstate wire, these communications were typically transmitted by wire (i.e., electronically), and Defendants also transmitted, or caused to be transmitted, by wire communications among Defendants and/or with unknown officers, directors, and/or agents in furtherance of their scheme alleged herein.

Defendants carried out their scheme in different States, including, but not limited to, New York, Florida, and Pennsylvania, and could not have done so unless they used interstate wires.

Specifically, L & K and its principals – Defendants Lee and Kang – willfully and fraudulently created forty-nine (49) fake invoices, using L & K's computer, named, LK5, located at 41-23 Murray Street, Suite 201, Flushing, NY 11355, on January 9, 2023, from at or around 5:22:56 to at or around 5:32:49, and used wire communication, to wit: email, to transmit those fake invoices on that same day to Defendant You, who was located in Florida.

In his sworn testimony, which took place on January 22, 2024, Defendant Kang admitted that he routinely communicated, and communicates, with Defendant You via email, as Defendant You resides in Florida.

Defendant You, upon receipt of the fake invoices from L & K and Defendants Lee and Kang, transmitted those fake invoices, or caused them to be transmitted, to Sunrise, located in Flushing, New York, by the use of wire communications, to wit: via email, on or about January 9, 2023.

In January 2023, Sunrise and its principals – Defendants Song and Oh – with the knowledge that those invoices were fraudulently created by L & K and its principals for the purpose of defrauding Plaintiff, laundering the monies that belonged to Plaintiff for their own financial benefits, and disguising the fraudulent, money laundering transactions as legitimate transactions, knowingly and intentionally caused those fake invoices to be transmitted via interstate wire communication, to wit: via email, to Plaintiff.

Sunrise and its principals – Defendants Song and Oh – with the knowledge that those invoices were fraudulently created by L & K and its principals and that those fake invoices were transmitted to Defendant You, located in Florida, via wire communication, used, transmitted, or caused to be transmitted, those fake invoices to Plaintiff, who resides in Philadelphia, Pennsylvania, not only to defraud Plaintiff, but also to launder the monies that belonged to Plaintiff for Defendants' own financial benefits and deprive Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Defendants' shared, common objective was, and is, to defraud Plaintiff and launder the monies that belonged to Plaintiff by diverting the insurance reimbursement payments Sunrise and Defendants Song and Oh received under the Federal Medicaid and Medicare programs for their own financial benefits.

Each Defendant possessed fraudulent intent to defraud Plaintiff.

Each Defendant personally knew of, and participated in, the fraud.

In furtherance of their master plan to defraud Plaintiff and launder the monies that belonged to Plaintiff for their own financial benefits, Defendants used interstate wire communications.

<u>Laundering of Monetary Instruments in Violation of 18 U.S.C. § 1956</u>:

Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that they knowingly conducted multiple financial transactions described herein, that the transactions in fact involved the proceeds of programs receiving Federal funds, as defined in 18 U.S.C. § 666 (Theft or bribery concerning programs receiving Federal funds), namely, Medicaid and Medicare programs for senior daycare providers, and that Defendants knew that the funds involved in the financial transactions represented the proceeds of unlawful activities or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952)

18 U.S.C. § 666 provides that "[w]hoever, if the circumstances described in subsection (b) of this section exists…, being an agent of an organization… embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that… is valued at $5,000 or more, and … is owned by, or is under the care, custody, or control of such organization…" "shall be fined under this title, imprisoned not more than 10 years, or both." "The circumstances referred to in subsection (a) of this section is that the organization… receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that they knowingly conducted multiple financial transactions described herein, that the transactions in fact involved the proceeds of unlawful activity or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952), and that Defendants knew that the funds involved in the financial transactions represented the proceeds of these unlawful activities.

That is, Defendants knowingly conducted multiple financial transactions where (a) Sunrise and Defendants Song and Oh wire $371,661.46 to Aurum Trading during the period March 2022 through May 2022; (b) L & K and Defendants Lee and Kang willfully and fraudulently create multiple fake invoices, retroactively, under the name of Aurum Trading and forward those fake invoices to Defendant You, who is in Florida, via email; (c) Defendant You, upon receipt of said fake invoices, forward them to Sunrise and Defendants Song and Oh in Flushing, New York, via email; (d) Aurum

Trading and Defendant You keep 8 % to 12% of the wired amounts as "commissions" or "kickbacks"; (e) Defendant You transports 88% to 92% of the wired amounts in cash by traveling from Florida to New York on a monthly basis; (f) Aurum Trading and Defendant You tender 88% to 92% of the wired amounts in cash to Kangsan Consulting and Defendant Lee in Flushing, New York; (g) Kangsan Consulting and Defendant Lee keep certain portions of the cash tendered by Aurum Trading and Defendant You and distribute the remaining portions to Sunrise's elderly clients and other seniors in cash as "rebates," "kickbacks," or "allowances"; (h) Kangsan Consulting and Defendant Lee induce Sunrise's elderly clients to get certain pharmaceutical products and/or prescription medications that yield a high profit margin from various pharmacies in Queens, New York; and (i) in return, those pharmacies in Queens, New York, pay certain portions of the profits they have made to Kangsan Consulting and Defendant Lee as "commissions," "kickbacks," or "referral fees."

In conducting the fraudulent financial transactions described herein, Defendants knew that the invoices created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, were fake invoices, disguised as Sunrise's purchase of food products from Aurum Trading.

In conducting the fraudulent financial transactions described herein, Defendants knew that the fake invoices were created for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Sunrise, Defendant Song, and Defendant Oh knew that the wired funds were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants, or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

Aurum Trading and Defendant You knew that the funds wired to Aurum Trading's bank accounts at TD Bank, Bank of America, Wells Fargo, Chase, and Citibank were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants, or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from

specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952)

Aurum Trading and Defendant You knew that the funds they converted into cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

Kangsan Consulting and Defendant Lee knew that the funds they received in cash from Aurum Trading and Defendant You were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952)

Kangsan Consulting and Defendant Lee knew that the funds they distributed to Sunrise's elderly clients and other seniors in cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs or that they conducted the transactions with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952)

Defendants knew that pursuant to the Medicaid and Medicare programs, wiring said funds to Aurum Trading and Defendant You based on the fake invoices, created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants was in and of itself an illegal activity, or that their transfer of said funds to Aurum Trading and Defendant You was designed in whole or in part to disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity.

In conducting fraudulent financial transactions described herein, Sunrise and Defendants Song and Oh knew that the monies they wired to Aurum Trading and Defendant You belonged to Plaintiff and were designed in whole or in part to disguise

the nature and the source of the proceeds of unlawful activity in that Sunrise and Defendants Song and Oh knew that the invoices purportedly issued by Aurum Trading were fake invoices and that Sunrise and Defendants Song and Oh never placed any food purchase orders with Aurum Trading.

In conducting fraudulent financial transactions described herein, Aurum Trading and Defendant You knew that the monies they received from Sunrise and Defendants Song and Oh belonged to Plaintiff and were designed in whole or in part to disguise the nature and the source of the proceeds of unlawful activity in that Aurum Trading and Defendant You knew that the invoices purportedly issued by Aurum Trading were fake invoices and that Aurum Trading was and still is not a food manufacturer or distributor.

Aurum Trading and Defendant You knew that the transaction or conduct of keeping 8% to 12% of the wired monies in and of itself was an illegal activity and that said transaction was designed in whole or in part to conceal or disguise the nature, the source, and the ownership of the proceeds of unlawful activity or that Aurum Trading and Defendant You kept 8% to 12% of the wired monies with the intent to promote the carrying on of specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the cash they received from Aurum Trading and Defendant You represented the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received from various insurance companies into cash for the purpose of defrauding Plaintiff, money laundering, financially enriching Defendants, and distributing said cash to Sunrise's elderly clients in the form of cash "rebates," "kickbacks," or "allowances."

In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the transaction was designed in whole or in part to conceal the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952)

In conducting fraudulent financial transactions described herein, Defendants knew that giving and receiving and otherwise sharing "rebates," "kickbacks," or "referral fees" was in and of itself an illegal activity.

In conducting fraudulent financial transactions described herein, Defendants knew the existence of the contracts between Plaintiff and Defendants Song and Oh under which

Defendants Song and Oh were required to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired to Aurum Trading and Defendant You were used for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants instead of paying Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired, distributed, and shared among Defendants belonged to Plaintiff under the contracts between Plaintiff and Defendants Song and Oh.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 666 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 1343 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 1957 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. §§ 2314 and 2315 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 1952 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants made wire and cash transactions involving the proceeds of the scheme to siphon money that Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits, a scheme that was furthered by the use of interstate wire communications, interstate transportation of stolen money, and interstate travel, with the knowledge that the transactions represented the proceeds of that scheme and with the further knowledge that these transactions, which involved $371,661.46, were intended to disguise the nature, the source, and the location/destination of the stolen money.

<u>Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity in Violation of 18 U.S.C. § 1957</u>:

Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1957 in that they knowingly conducted multiple monetary transactions in criminally derived property of a value greater than $10,000.00 and was derived from specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

Specifically, Defendants knowingly conducted multiple monetary transactions in criminally derived property of a value greater than $10,000.00 where (a) Sunrise and Defendants Song and Oh wire $371,661.46 or more to Aurum Trading during the period March 2022 through May 2022; (b) L & K and Defendants Lee and Kang willfully and fraudulently create multiple fake invoices, retroactively, under the name of Aurum Trading and forward those fake invoices to Defendant You, who is in Florida, via email; (c) Defendant You, upon receipt of said fake invoices, forward them to Sunrise and Defendants Song and Oh in Flushing, New York, via email; (d) Aurum Trading and Defendant You keep 8 % to 12% of the wired amounts as "commissions" or "kickbacks"; (e) Defendant You transports 88% to 92% of the wired amounts in cash by traveling from Florida to New York on a monthly basis; (f) Aurum Trading and Defendant You tender 88% to 92% of the wired amounts in cash to Kangsan Consulting and Defendant Lee in Flushing, New York; (g) Kangsan Consulting and Defendant Lee keep certain portions of the cash tendered by Aurum Trading and Defendant You and distribute the remaining portions to Sunrise's elderly clients and other seniors in cash as "rebates," "kickbacks," or "allowances"; (h) Kangsan Consulting and Defendant Lee induce Sunrise's elderly clients to get certain pharmaceutical products and/or prescription medications that yield a high profit margin from various pharmacies in Queens, New York; and (i) in return, those pharmacies in Queens, New York, pay certain portions of the profits they have made to Kangsan Consulting and Defendant Lee as "commissions," "kickbacks," or "referral fees."

In conducting the fraudulent financial transactions described herein, Defendants knew that the invoices created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, were fake invoices, disguised as Sunrise's purchase of food products from Aurum Trading.

Sunrise, Defendant Song, and Defendant Oh knew that the wired funds were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Aurum Trading and Defendant You knew that the funds wired to Aurum Trading's bank accounts were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were wired for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Aurum Trading and Defendant You knew that the funds that Aurum Trading and Defendant You converted into cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were converted into cash for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Kangsan Consulting and Defendant Lee knew that the funds they received in cash from Aurum Trading and Defendant You were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs and that they were converted into cash for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Kangsan Consulting and Defendant Lee knew that the funds they distributed to Sunrise's elderly clients and other seniors in cash were the insurance reimbursement payments Sunrise received from various insurance companies, such as Agewell New York LLC, Centers Plan for Healthy Living, LLC, Integra MLTC, Inc., VillageCare, and HomeFirst, under the Federal Medicaid and/or Medicare programs.

Defendants knew that pursuant to the Medicaid and Medicare programs, wiring said funds to Aurum Trading based on the fake invoices, created by L & K and Defendants Lee and Kang, and purportedly issued by Aurum Trading, for the purpose of defrauding Plaintiff, money laundering, financially enriching Defendants, and cash distributions and payouts was in and of itself an illegal activity, or that their transfer of said funds to Aurum Trading and Defendant You was designed in whole or in part to disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity and that they were derived from specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

In conducting fraudulent financial transactions described herein, Aurum Trading and Defendant You knew that the monies they received from Sunrise and Defendants Song and Oh were designed in whole or in part to disguise the nature and the source of the proceeds of unlawful activity and they were derived from specified unlawful activity,

to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952), in that Aurum Trading and Defendant You knew that the invoices purportedly issued by Aurum Trading were fake invoices and that Aurum Trading was and still is not a food manufacturer or distributor.

Aurum Trading and Defendant You knew that the transaction or conduct of keeping 8% to 12% of the wired monies in and of itself was an illegal activity and that said transaction was designed in whole or in part to conceal or disguise the nature, the source, and the ownership of the proceeds of unlawful activity and those monies were derived from specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the cash they received from Aurum Trading and Defendant You represented the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received from various insurance companies into cash for the purpose of defrauding Plaintiff, money laundering, financially enriching Defendants, and distributing said cash to Sunrise's elderly clients and other seniors in the form of cash "rebates," "kickbacks," or "allowances."

In conducting fraudulent financial transactions described herein, Kangsan Consulting and Defendant Lee knew that the transaction was designed in whole or in part to conceal the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity of converting the insurance reimbursement payments Sunrise received under the Federal Medicaid and Medicare programs into cash for their own financial benefits and the monies were derived from specified unlawful activity, to wit: wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

In conducting fraudulent financial transactions described herein, Defendants knew that giving and receiving "rebates," "kickbacks," or "referral fees" was in and of itself an illegal activity.

In conducting fraudulent financial transactions described herein, Defendants knew the existence of the contracts between Plaintiff and Defendants Song and Oh under which Defendants Song and Oh were required to pay Sunrise's Accounts Receivable incurred on or before February 8, 2022, to Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired to Aurum Trading were used for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants instead of paying Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants knew that the funds wired, distributed, and shared among Defendants belonged to Plaintiff under the contracts between Plaintiff and Defendants Song and Oh.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 666 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 1956 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. §§ 2314 and 2315 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants did so with the intent to violate, or promote violation of, 18 U.S.C. § 1952 and to defraud Plaintiff.

In conducting fraudulent financial transactions described herein, Defendants made wire and cash transactions involving the proceeds of the scheme to siphon money that Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits, a scheme that was furthered by the use of interstate wire communications, interstate transportation of stolen money, and interstate travel, with the knowledge that the transactions represented the proceeds of that scheme and criminally derived property and with the further knowledge that the criminally derived property, $371,661.46, was derived from wire fraud (18 U.S.C. § 1343), theft concerning programs receiving Federal funds (18 U.S.C. § 666), laundering of monetary instruments (18 U.S.C. § 1956), transport and receipt of stolen money (18 U.S.C. § 2314 and 2315), and interstate and foreign travel or transportation in aid of racketeering enterprises (18 U.S.C. § 1952).

<u>Transport and Receipt of Stolen Money in Violation of 18 U.S.C. §§ 2314 and 2315</u>:

Defendant You committed acts constituting indictable offenses under 18 U.S.C. § 2314 in that he transported, and still transports, stolen or converted money of the value of $5,000 or more, as described herein, from Florida to New York on a monthly basis for the purpose of tendering cash to Kangsan Consulting and Defendant Lee with the knowledge that the transported cash was stolen, converted, or taken by fraud.

The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice described herein.

The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, converted, or taken by fraud because Defendant You knew that the wired money was the insurance reimbursement payments Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and/or Medicare programs.

The acts of Defendant You set forth above were done willfully and with the knowledge that the money was stolen, unlawfully converted, or taken by fraud because Defendant You was, and is, the one that converted the wired funds into cash for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

Kangsan Consulting, Defendant Lee, and Defendant Oh committed acts constituting indictable offenses under 18 U.S.C. § 2315 in that they received and kept, and still receive and keep, the cash in excess of $5,000.00, which crossed a State – from Florida to New York – after being stolen, unlawfully converted, or taken.

The cash Kangsan Consulting and Defendant Lee received from Defendant You was used to financially enrich Defendants Lee and Oh, who are fiancés.

The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, unlawfully converted, or taken. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice described herein.

The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, unlawfully converted, or taken because they knew that the money wired by Sunrise, Defendant Song, and Defendant Oh to Aurum Trading and Defendant You was the insurance reimbursement payments Sunrise and Defendants Song and Oh received from various insurance companies under the Federal Medicaid and/or Medicare programs for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, unlawfully converted, or taken because they knew that the wired money was converted into cash by Aurum Trading and Defendant You for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

The acts of Kangsan Consulting, Defendant Lee, and Defendant Oh set forth above were done willfully and with the knowledge that the money was stolen, unlawfully converted, or taken because they knew that Defendant You transported the cash from Florida to New York by traveling interstate for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants.

<u>Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises in Violation of 18 U.S.C. § 1952</u>:

Defendant You committed acts constituting indictable offenses under 18 U.S.C. § 1952 in that he traveled, and still travels, interstate – to and from Florida and New York – with intent to distribute the proceeds of unlawful activities derived from money laundering and monetary transactions in property derived from specified unlawful activity (*see* 18 U.S.C. §§ 1956 and 1957), as described herein, to Kangsan Consulting and Defendant Lee, and Defendant You did in fact promote, manage, carry on, facilitate the promotion, management, or carrying on of the unlawful activity of money laundering and monetary transactions in property derived from specified unlawful activity.

The cash Defendant You traveled, and still travels, with are the proceeds of unlawful activities derived from money laundering and monetary transactions in property derived from specified unlawful activity, as described herein, and they were in fact distributed, and are still being distributed, to Kangsan Consulting, Defendant Lee, Defendant Oh, Sunrise's elderly clients, and other seniors as part of Defendants' scheme or artifice in furtherance of achieving the goals of their RICO enterprise.

**(d) State whether a predicate act is based upon a criminal conviction.**

The predicate acts alleged in the Complaint are not based upon a criminal conviction.

**(e) State whether civil litigation has resulted in a judgment with regard to the predicate acts.**

No civil litigation has resulted in a judgment with regard to the predicate acts.

**(f) Describe how the predicate acts form a "pattern of racketeering activity."**

Defendants, each of whom are persons associated with the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of

the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c).

The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violations alleged herein.

Defendants each committed at least two such acts or else aided and abetted such acts.

The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately March 2022 and is ongoing still, and there is a threat of continuing criminal activity beyond the period during which the predicate acts were performed.

Defendants engaged in the pattern of racketeering activities of wiring funds received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts (involving Sunrise, Defendant Song, Defendant Oh, Aurum Trading, and Defendant You), creating fake invoices to disguise the fraudulent, money laundering transactions as legitimate transactions (involving L & K, Defendant Lee, and Defendant Kang), using those fake invoices to defraud Plaintiff (involving Sunrise, Defendant Song, Defendant Oh, L & K, Defendant Lee, and Defendant Kang), converting those funds into cash (involving Aurum Trading and Defendant You), keeping portions of the funds for their own financial benefits (involving Aurum Trading, Defendant You, Kangsan Consulting, and Defendant Lee), transporting the proceeds of unlawful activities of money laundering interstate (involving Aurum Trading and Defendant You), traveling interstate with intent to distribute the proceeds (involving Defendant You), distributing the proceeds (involving Kangsan Consulting, L & K, Defendant Lee, and Defendant Kang), receiving and keeping the proceeds to financially enrich themselves (involving Aurum Trading, Defendant You, Kangsan Consulting, Defendant Lee, and Defendant Oh), giving away cash payouts to Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients (involving Kangsan Consulting, L & K, Defendant Lee, Sunrise, Defendant Song, and Defendant Oh), inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications (involving Kangsan Consulting and Defendant Lee), soliciting those elderly clients to obtain home care services (involving Kangsan Consulting and Defendant Lee), knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733 (involving Sunrise, Defendant Song, and Defendant Oh), conspiring in a coordinated scheme to defraud the Medicaid and

Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347 (involving Sunrise, Defendant Song, and Defendant Oh), sharing the funds converted into cash among Defendants (involving all Defendants), and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (involving all Defendants).

Defendant You conducted and participated in the conduct of the affairs of the alleged enterprise through a pattern of racketeering activities of conspiring with Sunrise, Kangsan Consulting, L & K, Defendant Song, Defendant Oh, Defendant Lee, and Defendant Kang to defraud Plaintiff and to create fake invoices as if those invoices were for Sunrise's purchase of food products from Aurum Trading, keeping 8% to 12% of the funds he received from Sunrise and Defendants Song and Oh as "kickbacks" or "rebates," disseminating said fake invoices interstate to Sunrise by the use of interstate wire communication, transporting stolen money interstate, traveling interstate with intent to distribute the proceeds of unlawful activities of money laundering, and distributing those proceeds to Kangsan Consulting, Defendant Lee, and Defendant Oh.

Defendant Lee, conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring with Sunrise, Defendant Song, Defendant Oh, Aurum Trading, Defendant You, L & K, and Defendant Kang to defraud Plaintiff and to execute the schemes described herein, creating at least forty-nine (49) fake invoices under the name of Aurum Trading, disseminating those fake invoices interstate by the use of wire communication, keeping certain portions of the cash he received from Aurum Trading and Defendant You for his own financial benefits, receiving the proceeds of unlawful activities of money laundering and monetary transactions in property derived from specified unlawful activity, keeping and using those proceeds to financially enrich himself and his fiancé, Defendant Oh, distributing cash payouts to Sunrise' elderly clients and other seniors as "kickbacks," "rebates," or "allowances," inducing Sunrise's elderly clients and other seniors to enroll in Sunrise's daycare program or to remain as Sunrise's clients, inducing Sunrise's elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting Sunrise's elderly clients to get home care services from various home care service companies that he is affiliated with, and giving and receiving "kickbacks," "rebates," and "referral fees" from various sources, including, but not limited to, Sunrise, Defendants Song and Oh, Aurum Trading, Defendant You, and various pharmacies and home care service companies.

Defendant Kang conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring with Sunrise, Defendant Song, Defendant Oh, Aurum Trading, Defendant You, Kangsan Consulting, and Defendant Lee to defraud Plaintiff, creating at least forty-nine (49) fake invoices under the name of Aurum Trading, and disseminating those fake invoices interstate by the use of wire communication to Defendant You.

Defendants Song and Oh conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of conspiring with Sunrise, Aurum Trading, Kangsan Consulting, L & K, Defendant You, Defendant Lee, and Defendant Kang to defraud Plaintiff and to execute the schemes described herein, receiving the fake invoices knowing that they were fake via interstate wire communication, causing those fake invoices to be transmitted to Plaintiff, using those fake invoices to defraud Plaintiff, depriving Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs to Aurum Trading and Defendant You as if those funds were wired for the purpose of purchasing food products from Aurum Trading, wiring the funds they received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts, and conspiring to distribute cash payouts to Sunrise's elderly clients and other seniors in the form of "kickbacks" "rebates," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients.

Additionally, Defendant Oh conducted and participated in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activities of receiving the proceeds of unlawful activities of money laundering with the knowledge that those proceeds were the products of money laundering and that they were stolen, unlawfully converted, or taken.

As such, there is a threat of continuing criminal activity extending indefinitely into the future, and the nature of the predicate acts themselves implies a threat of continuing activity.

The means employed by Defendants with respect to Plaintiff and other potential victims is the same, and that Defendants were, and continue to be, engaged in a scheme defrauding other potential victims.

Because Defendants have been continuously managing and operating the alleged enterprise to date, there is a threat of continuing criminal activity extending indefinitely into the future creating more victims similar to Plaintiff.

The association-in-fact enterprise, as alleged herein, was not limited to the predicate acts and extended beyond the racketeering activity.

Plaintiff specifically alleges that Defendants, each of them, participated in the operation and management of the association-in-fact enterprise by overseeing and coordinating the commission of multiple acts of racketeering as described herein.

**(g) State whether the alleged predicate acts related to each other as part of a common plan. If so, describe in detail.**

The alleged predicate acts relate to each other as part of a common plan in that each predicate act occurred in sequence. That is, the pattern of racketeering activities is a substantial factor in the sequence of responsible causation. Defendants created a system where each act by the responsible party caused or triggered the next responsible party or parties to engage in their respective role(s) in sequence as part of their common scheme or artifice.

The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

Specifically, each Defendant committed at least two such acts in furtherance of their common plan. These acts in furtherance of their common plan included, but are not limited to, wiring funds received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts (involving Sunrise, Defendant Song, Defendant Oh, Aurum Trading, and Defendant You), creating fake invoices to disguise the fraudulent, money laundering transactions as legitimate transactions (involving L & K, Defendant Lee, and Defendant Kang), using those fake invoices to defraud Plaintiff (involving Sunrise, Defendant Song, Defendant Oh, L & K, Defendant Lee, and Defendant Kang), converting those funds into cash (involving Aurum Trading and Defendant You), keeping portions of the funds for their own financial benefits (involving Aurum Trading, Defendant You, Kangsan Consulting, and Defendant Lee), transporting the proceeds of unlawful activities of money laundering interstate (involving Aurum Trading and Defendant You), traveling interstate with intent to distribute the proceeds (involving Defendant You), distributing the proceeds (involving Kangsan Consulting, L & K, Defendant Lee, and Defendant Kang), receiving and keeping the proceeds to financially enrich themselves (involving Aurum Trading, Defendant You, Kangsan Consulting, Defendant Lee, and Defendant Oh), giving away cash payouts to Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients (involving Kangsan Consulting, L & K, Defendant Lee, Sunrise, Defendant Song, and Defendant Oh), inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications (involving Kangsan Consulting and Defendant Lee), soliciting those elderly clients to obtain home care services (involving Kangsan Consulting and Defendant Lee), knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733 (involving Sunrise, Defendant Song, and Defendant Oh), conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal

Health Care Fraud Statute, 18 U.S.C. § 1347 (<u>involving Sunrise, Defendant Song, and Defendant Oh</u>), sharing the funds converted into cash among Defendants (involving all Defendants), and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (<u>involving all Defendants</u>).

Thus, the alleged predicate acts are related to each other as part of a common plan.

6. **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

   (a) **State the names of the individuals, partnerships, corporations, associates, or other legal entities that allegedly constitute the enterprise.**

   Sunrise Senior Service LLC d/b/a Hanmaum Daycare;
   Taeyoung Song;
   Jieun Oh;
   Aurum Trading Inc.;
   Ji Hoon You;
   Kangsan Consulting LLC;
   Kangsan Lee;
   L & K Office Inc.; and
   Jin Young Kang a/k/a Jinyoung Kang a/k/a Jin Y. Kang.

   (b) **Describe the structure, purpose, function, and course of conduct of the enterprise.**

   Defendants Song, Defendant Oh, Defendant You, Defendant Lee, and Defendant Kang, together with (1) Sunrise; (2) one or more officers and/or directors of Sunrise; (3) one or more former officers and/or directors of Sunrise; (4) one or more employees of Sunrise; (5) Aurum Trading; (6) one or more officers and/or directors of Aurum Trading; (7) one or more former officers and/or directors of Aurum Trading; (8) one or more employees of Aurum Trading; (9) Kangsan Consulting; (10) one or more officers and/or directors of Kangsan Consulting; (11) one or more former officers and/or directors of Kangsan Consulting; (12) one or more employees of Kangsan Consulting; (13) L & K; (14) one or more officers and/or directors of L & K; (15) one or more former officers and/or directors of L & K; (16) one or more employees of L & K; and/or (17) Does 1 through 50, inclusive, form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activities.

   Defendants joined together as a group and functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activities. There may also be other individuals and/or corporate entities associated with the enterprise who are unknown at this time.

Defendant Lee is the principal of Kangsan Consulting, and he is also one of the principals of L & K.

Kangsan Consulting and L & K share the common address, 41-23 Murray Street, Suite 201, Flushing, NY 11355.

Defendants Lee and Kang are licensed Enrolled Agents providing tax advice and accounting services to their clients, including Sunrise, Aurum Trading, and Defendant You.

Defendants – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – joined together as a group to: (a) launder insurance reimbursements payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs to financially enrich themselves; (b) create fake invoices to disguise those fraudulent, money laundering transactions as legitimate transactions; (c) distribute cash payouts to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program to financially enrich Sunrise, Defendant Song, and Defendant Oh; (d) make false or fraudulent claims to various insurance companies by claiming that elderly clients were present at Sunrise's senior care facilities when they were not to financially enrich Sunrise, Defendant Song, and Defendant Oh; (e) give, receive, or otherwise share "rebates," "kickbacks," or "referral fees" among themselves to financially enrich themselves; (f) transport stolen money by travelling interstate from Florida to New York; (g) receive "rebates," kickbacks," or "referral fees" from various pharmacies and home care service companies affiliated with them; (h) defraud Plaintiff; and (i) conspire in a coordinated scheme to defraud the Medicaid and Medicare programs.

Defendants – Sunrise and its principals – Defendants Song and Oh – Aurum Trading and its principal – Defendant You – Kangsan Consulting and its principal – Defendant Lee – and L & K and its principals – Defendants Lee and Kang – were, and still are, a separate and distinct assortment of private individuals and corporations or limited liability companies and that they were, and still are, separate, culpable parties.

Defendants shared a common purpose to engage in the particular course of conduct described in the Complaint and worked together as a continuing unit to achieve their goal of financially enriching themselves in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) and the alleged predicate acts.

Each Defendant participated, and still participates, in the operation or management of the alleged RICO enterprise as described herein.

Defendants engaged in the course of conduct of wiring funds received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of money laundering and cash distributions and payouts (<u>involving Sunrise, Defendant Song, Defendant Oh, Aurum Trading, and Defendant You</u>), creating fake invoices to disguise the fraudulent, money laundering transactions as legitimate transactions (<u>involving L & K, Defendant Lee, and Defendant Kang</u>), using those fake invoices to defraud Plaintiff (<u>involving Sunrise, Defendant Song, Defendant Oh, L & K, Defendant Lee, and Defendant Kang</u>), converting those funds into cash (<u>involving Aurum Trading and Defendant You</u>), keeping portions of the funds for their own financial benefits (<u>involving Aurum Trading, Defendant You, Kangsan Consulting, and Defendant Lee</u>), transporting the proceeds of unlawful activities of money laundering interstate (<u>involving Aurum Trading and Defendant You</u>), travelling interstate with intent to distribute the proceeds (<u>involving Defendant You</u>), distributing the proceeds (<u>involving Kangsan Consulting, L & K, Defendant Lee, and Defendant Kang</u>), receiving and keeping the proceeds to financially enrich themselves (<u>involving Aurum Trading, Defendant You, Kangsan Consulting, Defendant Lee, and Defendant Oh</u>), giving away cash payouts to Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances" for the purpose of inducing them to enroll in Sunrise's daycare program or to remain as Sunrise's clients (<u>involving Kangsan Consulting, L & K, Defendant Lee, Sunrise, Defendant Song, and Defendant Oh</u>), inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications (<u>involving Kangsan Consulting and Defendant Lee</u>), soliciting those elderly clients to obtain home care services (<u>involving Kangsan Consulting and Defendant Lee</u>), knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733 (<u>involving Sunrise, Defendant Song, and Defendant Oh</u>), conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347 (<u>involving Sunrise, Defendant Song, and Defendant Oh</u>), sharing the funds converted into cash among Defendants (<u>involving all Defendants</u>), and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (<u>involving all Defendants</u>).

**(c) State whether any defendants are employees, officers, or directors of the alleged enterprise.**

Plaintiff states that no Defendants are employees, officers, or directors of the alleged enterprise.

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The enterprise "is an entity, ... a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). A

racketeering enterprise is proven through "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*; *see also United States v. Morales*, 185 F.3d 74, 80 (2d Cir.1999). Thus, evidence of an ongoing organization, the associates of which function as a continuing unit, suffices to prove an enterprise. *See Turkette*, 452 U.S. at 583; *see also Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 15 (2d Cir.1989).

Because the alleged enterprise herein is not a formal organization or legal entity, it cannot be said that Defendants are employees, officers, or directors of the alleged enterprise.

**(d) State whether any defendants are associated with the alleged enterprise.**

All Defendants are associated with the alleged enterprise, as each Defendant was, and still is, involved with the alleged enterprise with his, her, or its respective role(s) to achieve their shared, common objective described herein.

Sunrise, Defendant Song, Defendant Oh, Aurum Trading, Defendant You, Kangsan Consulting, Defendant Lee, L & K, and Defendant Kang constitute a group of persons associated together for a common purpose of engaging in the course of conduct described herein. These Defendants functioned, and still function, as a continuing unit.

**(e) State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise.**

Plaintiff states that Defendants are individuals or entities separate and distinct from the alleged enterprise. Defendants – Sunrise, Defendant Song, Defendant Oh, Aurum Trading, Defendant You, Kangsan Consulting, Defendant Lee, L & K, and Defendant Kang – were, and still are, a separate and distinct assortment of private individuals and corporations or limited liability companies and that they were, and still are, separate, culpable parties. Defendants, together, form an association-in-fact enterprise.

**(f) If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

Plaintiff states that Defendants are individuals or entities separate from the alleged enterprise; thus, N/A.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

Plaintiff states that Defendants functioned as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity, as described above. Even without the alleged predicate acts, the RICO enterprise existed,

and continues to exist, in continuity separate and distinct from the alleged predicate acts. That is, other than the alleged predicate acts, Defendants have been engaged in other fraudulent and deceptive activities of falsifying business records, making misrepresentations, giving, receiving, or otherwise sharing "kickbacks," "rebates," "allowances," and "cash distributions and payouts" for the purpose of inducing Sunrise's elderly clients and other seniors to enroll in Sunrise's daycare program or to remain as Sunrise's clients, inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting those elderly clients to obtain home care services, knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, sharing the funds converted into cash among Defendants, and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The pattern of racketeering activity differs from the usual and daily activities of the enterprise in that even without the alleged predicate acts, the RICO enterprise existed, and continues to exist, in continuity separate and distinct from the alleged predicate acts. That is, other than the alleged predicate acts, Defendants have been engaged in other fraudulent and deceptive activities of falsifying business records, making misrepresentations, giving, receiving, or otherwise sharing "kickbacks," "rebates," "allowances," and "cash distributions and payouts" for the purpose of inducing Sunrise's elderly clients and other seniors to enroll in Sunrise's daycare program or to remain as Sunrise's clients, inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting those elderly clients to obtain home care services, knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, sharing the funds converted into cash among Defendants, and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

The alleged enterprise was not formed for the sole purpose of engaging in the pattern of racketeering activities alleged herein.

The alleged enterprise was not limited to the predicate acts and extended beyond the racketeering activity.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

Financial Benefits. Defendants used the monies that belonged to Plaintiff to financially enrich themselves by engaging in the alleged pattern of racketeering activity.

Defendants knowingly conducted, and still conduct, multiple financial transactions where (a) Sunrise and Defendants Song and Oh wire $371,661.46 to Aurum Trading; (b) L & K and Defendants Lee and Kang willfully and fraudulently create multiple fake invoices, retroactively, under the name of Aurum Trading and forward those fake invoices to Defendant You, who is in Florida, via email; (c) Defendant You, upon receipt of said fake invoices, forward them to Sunrise and Defendants Song and Oh in Flushing, New York, via email; (d) Aurum Trading and Defendant You keep 8 % to 12% of the wired amounts as "commissions" or "kickbacks"; (e) Defendant You transports 88% to 92% of the wired amounts in cash by traveling from Florida to New York on a monthly basis; (f) Aurum Trading and Defendant You tender 88% to 92% of the wired amounts in cash to Kangsan Consulting and Defendant Lee in Flushing, New York; (g) Kangsan Consulting and Defendant Lee keep certain portions of the cash tendered by Aurum Trading and Defendant You and distribute the remaining portions to Sunrise's elderly clients and other seniors in cash as "rebates," "kickbacks," or "allowances" in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program; (h) Kangsan Consulting and Defendant Lee induce Sunrise's elderly clients to get certain pharmaceutical products and/or prescription medications that yield a high profit margin from various pharmacies in Queens, New York; and (i) in return, those pharmacies in Queens, New York, pay certain portions of the profits they have made to Kangsan Consulting and Defendant Lee as "commissions," "kickbacks," or "referral fees."

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The law in this Circuit does not require RICO plaintiffs to show more than a minimal effect on interstate commerce. *United States v. Barton*, 647 F.2d 224, 233 (2d Cir. 1981), *cert. denied*, 454 U.S. 857 (1981) ("In determining what connections with interstate commerce must be proven… to establish a violation of § 1962, the courts have ruled that the impact need not be great. So long as the activities of the enterprise affect interstate commerce, the jurisdictional element is satisfied.").

Here, the activities of the enterprise affected interstate commerce in that the activities of the enterprise: (a) involved transmitting, or causing to be transmitted, the forty-nine (49) fake invoices from New York to Florida by L & K and Defendants Lee and Kang to Defendant You; (b) involved transmitting, or causing to be transmitted, the forty-nine (49) fake invoices from Florida to New York by Defendant You to Sunrise and Defendants Song and Oh; (c) involved transmitting, or causing to be transmitted, the forty-nine (49) fake invoices from New York to Pennsylvania by Sunrise, Defendant Song, and Defendant Oh

to Plaintiff; (d) involved defrauding Plaintiff, an out-of-state individual located in Philadelphia, Pennsylvania; (e) triggered Defendant You, located in Florida, to convert the funds Sunrise and Defendants Song and Oh wired to Aurum Trading into cash; (f) triggered Defendant You to transport that cash from Florida to New York on multiple occasions by interstate travel; and (g) involved cash payouts and distributions to Sunrise's elderly clients and other seniors who are from out-of-state, such as New Jersey.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

N/A

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

N/A

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c):**

**(a) State who is employed by or associated with the enterprise.**

Sunrise Senior Service LLC d/b/a Hanmaum Daycare;
Taeyoung Song;
Jieun Oh;
Aurum Trading Inc.;
Ji Hoon You;
Kangsan Consulting LLC;
Kangsan Lee;
L & K Office Inc.; and
Jin Young Kang a/k/a Jinyoung Kang a/k/a Jin Y. Kang

are associated with the enterprise.

**(b) State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3). Each Defendant violated 18 U.S.C. § 1962(c) by the acts described herein. Defendants were, and still are, a separate and distinct assortment of private individuals and corporations or limited liability companies, and they were, and still are, separate, culpable parties.

Thus, Plaintiff states that the alleged RICO Defendants and the enterprise are distinct, and no entity is both the liable "person" and the "enterprise" under § 1962(c).

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

In violation of 18 U.S.C. § 1962(d), Defendants, and each of them, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activities as alleged herein.

Defendants agreed to form and associate themselves with a RICO enterprise, agreed to commit at least two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise, and if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity.

On or about February 18, 2022, Closing took place, and Plaintiff only received $2,000.00 in compensation for the sale of his entire ownership interest in Sunrise to Defendants Song and Oh.

Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its new owners – Defendants Song and Oh – entered into an agreement with Aurum Trading and its owner – Defendant You – under which they conspired to defraud Plaintiff, launder the monies that belonged to Plaintiff, and share the proceeds among themselves.

Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendants Song and Oh – Aurum Trading and its owner – Defendant You – and Kangsan Consulting and its owner – Defendant Lee – entered into an agreement under which they conspired to defraud Plaintiff, launder the monies that belonged to Plaintiff, and share the proceeds among themselves, and give away cash payouts as "rebates," "kickbacks," or "allowances" to Sunrise's elderly clients and other seniors in order to induce them to remain as Sunrise's clients or to enroll in Sunrise's senior care program.

Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendant Song and Oh – Aurum Trading and its owner – Defendant You – Kangsan Consulting and its owner – Defendant Lee –  L & K and its principals – Defendants Lee and Kang – entered into an agreement under which they conspired to defraud Plaintiff, launder the monies that belonged to Plaintiff, share the proceeds among themselves, and give away cash payouts as "kickback," "allowances," "rebates," and/or "referral fees" to Sunrise's elderly clients and other seniors.

Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Sunrise and its owners – Defendant Song and Oh – Aurum Trading and its owner – Defendant You – Kangsan Consulting and its owner – Defendant Lee –  L & K and its principals – Defendants Lee and Kang – entered into an agreement under which they conspired to create fake invoices in order to defraud Plaintiff and disguise the fraudulent, money laundering transactions as legitimate transactions.

Upon information and belief, after the date of Closing for said ownership interest transfer to Defendants Song and Oh, Defendants entered into an agreement under which they conspired to create fake invoices in order to defraud Plaintiff.

The conspiracy commenced at least as early as March 2022 and is still ongoing.

The conspiracy's purpose was to defraud Plaintiff, launder the monies that belonged to Plaintiff, and convert the insurance reimbursement payments Sunrise received from various insurance companies under the Federal Medicaid and Medicare programs for their own financial benefits.

As part of their conspiracy to defraud Plaintiff, launder the monies that belonged to Plaintiff, and convert said insurance reimbursement payments for their own financial benefits, Defendants did in fact deprive Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022, which primarily consisted of insurance reimbursement payments, to which Plaintiff was, and still is, entitled while Defendants used the monies that belonged to Plaintiff to financially benefit themselves.

Each Defendant committed at least two predicate acts in furtherance of such conspiracy. These acts in furtherance of the conspiracy included, but are not limited to, wiring funds received from various insurance companies under the Federal Medicaid and Medicare programs for the purpose of defrauding Plaintiff, money laundering, and financially enriching Defendants, creating fake invoices to defraud Plaintiff and disguise the fraudulent, money laundering transactions as legitimate transactions, transmitting, or causing to be transmitted, the fake invoices by the use of interstate wires, using those fake invoices to defraud Plaintiff, converting those funds into cash, keeping portions of the funds for their own financial benefits, money laundering, engaging in monetary transactions in property derived from specified unlawful activity, transporting the proceeds of unlawful activities of money laundering and monetary transactions in property derived from specified unlawful activity interstate, traveling interstate with intent to distribute the proceeds, distributing the proceeds, receiving and keeping the proceeds to financially enrich themselves, giving away cash payouts to Sunrise's elderly clients and other seniors in the form of "rebates," "kickbacks," or "allowances" for the purpose of inducing them to enroll in Sunrise's senior care program or to remain as Sunrise's clients, inducing those elderly clients and other seniors to get certain pharmaceutical products and/or prescription medications, soliciting those elderly clients to obtain home care services, knowingly submitting false or fraudulent claims to various insurance companies by claiming that certain elderly clients were physically present at Sunrise's daycare facilities when they were not in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729-3733, conspiring in a coordinated scheme to defraud the Medicaid and Medicare programs by submitting false or fraudulent claims for services that had not been provided in violation of the Criminal Health Care Fraud Statute, 18 U.S.C. § 1347, sharing the funds converted into cash among Defendants, and giving and receiving "kickbacks," "rebates," or "referral fees" to and from each other in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

Even if some of Defendants did not agree to harm Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall objects of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

**15. Describe the alleged injury to business or property.**

$439,267.00; Plaintiff was, and still is, entitled to Sunrise's Accounts Receivable incurred on or before February 8, 2022, but by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), Plaintiff was deprived of said Accounts Receivable. As a result, Plaintiff was damaged in the amount of $439,267.00.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The pattern of Defendants' racketeering activities described herein proximately caused Plaintiff's injury, as those RICO patterns or acts are a substantial factor in the sequence of responsible causation. That is, Defendants had, and still have, a set system where each act by the responsible party caused or triggered the next responsible party or parties to engage in their respective roles in sequence as part of their common scheme or artifice.

But for Defendants' deceptive and fraudulent conduct and behavior described herein, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

But for Defendants' violations of 18 U.S.C. § 1962(c), Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

But for Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Had Defendants not engaged in the pattern of racketeering activities described herein, Plaintiff would not have been injured in his business or property.

Had Defendants not engaged in the pattern of racketeering activities described herein, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Had Defendants not intentionally targeted Plaintiff, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Had Defendants not laundered the insurance reimbursement payments for their own financial benefits, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022, which primarily consisted of insurance reimbursement payments Sunrise received from various insurance companies.

Had Defendants not laundered the monies that belonged to Plaintiff, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Had Defendants not engaged in monetary transactions in property derived from specified unlawful activity, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Had Defendants not created the forty-nine (49) fake invoices, dated from December 1, 2021 to February 1, 2022, the period during which Plaintiff was still the sole member and owner of Sunrise, Plaintiff would not have been deprived of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

Defendants intentionally and purposefully deprived Plaintiff of Sunrise's Accounts Receivable incurred on or before February 8, 2022 by creating, transmitting, causing to be transmitted, using, presenting, or causing them to be presented, the forty-nine (49) fake invoices fraudulently created by L & K, Defendant Lee, and Defendant Kang. Said forty-nine (49) fake invoices were fraudulently created by L & K, Defendant Lee, and Defendant Kang to defraud Plaintiff and launder the monies that belonged to Plaintiff for Defendants' own financial benefits. Defendants' alleged conduct was, at the very least, a "substantial factor" in depriving Plaintiff of the Accounts Receivable, and this result was "reasonably foreseeable" by all Defendants involved in the affairs of the alleged enterprise, as they all knew about the existence of the contracts between Plaintiff and Defendants Song and Oh.

Defendants purposefully conspired to, and did in fact, create forty-nine (49) fake invoices for the period December 1, 2021 through February 1, 2022, the period during which Plaintiff was still the sole member and owner of Sunrise, in order to defraud Plaintiff by depriving him of Sunrise's Accounts Receivable incurred on or before February 8, 2022.

The injury to Plaintiff was reasonably foreseeable or anticipated as a natural consequence of Defendants' conduct and behavior described herein.

As a direct and proximate result of Defendants' fraudulent, deceptive activities, Plaintiff has suffered, and continues to suffer, financial damages.

Plaintiff has been damaged as a direct and proximate result of Defendants' participation in such enterprise, as alleged herein.

The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused, and continue to cause, injury to Plaintiff in his business or property by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d).

**17. List the damages sustained for which each defendant is allegedly liable.**

Defendants are jointly and severally liable for $439,267.00, as they functioned as a group to defraud Plaintiff and launder those monies that belonged to Plaintiff to financially enrich

themselves. Plaintiff was, and still is, entitled to Sunrise's Accounts Receivable incurred on or before February 8, 2022, but by reason of Defendants' violations of 18 U.S.C. § 1962(c) and (d), Plaintiff was deprived of said Accounts Receivable. As a result, Plaintiff was damaged in the amount of $439,267.00.

**18. List all federal causes of action, if any, and provide the relevant statute numbers.**

Federal Civil RICO, 18 U.S.C. § 1962(c); and
Conspiracy to Violate Federal Civil RICO, 18 U.S.C. § 1962(d).

**19. List all pendent state claims, if any.**

Tortious Interference with Contracts.

**20. Provide any additional information potentially helpful to the Court in adjudicating your RICO claim.**

Plaintiff respectfully states that Defendants converted a substantial amount of Medicaid and Medicare funds to enrich themselves, their families, and business associates through an elaborate network of related companies and collusive, fraudulent transactions, rather than use the funds for their intended purposes. Defendants not only intentionally targeted Plaintiff to deprive him of the Accounts Receivable he was and still is entitled to, but also wove a complicated web of fraudulent financial schemes to siphon money for their own financial benefits.

Senior daycare centers are supposed to be places where the elderly and vulnerable feel safe, not vehicles for scheming their owners, staff members, and affiliated entities to make illegal profits through "kickbacks," "rebates," "referral fees," and/or get-rich quick opportunities. Defendants preyed on the elderly by bribing their way into Sunrise. This is a serious matter involving public funds and interests. Plaintiff respectfully requests that the Court grant the relief sought in the Complaint.

Dated: August 22, 2024
      New York, New York

Respectfully submitted,

**AHNE & JI, LLP**

/s/ Younghoon Ji
By: Younghoon Ji, Esq.
*Attorneys for Plaintiff*
45 East 34th Street, 5th Floor
New York, New York 10016
Tel.: (212) 594-1035
Email: yji@ahnejillp.com